[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 20-11390
Non-Argument Calendar
_____

D.C. Docket No. 1:18-cv-24554-CMA

YOELMY FERNANDEZ RODRIGUEZ,

Plaintiff - Appellant,

versus

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(December 2, 2020)

Before ROSENBAUM, ANDERSON and DUBINA.

PER CURIAM:

Appellant Yoelmy Fernandez Rodriguez ("Rodriguez") appeals the district court's order adopting the magistrate judge's report and recommendation ("R&R") that granted summary judgment to the Social Security Commissioner ("Commissioner"), concluding that the Administrative Law Judge ("ALJ") properly denied Rodriguez's applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). Based on our review of the record, and after reading the parties' briefs, we affirm the district court's order.

## I.

Rodriguez is a 43-year old male, who has a 12th grade education and difficulty communicating in English. He previously worked as a warehouse worker/stocker before his alleged disability. He applied for DIB and SSI on July 28, 2015, alleging a disability onset date of June 1, 2013. In his disability report, Rodriguez stated that the conditions limiting his ability to work were his nerves and his bipolar disorder. He noted that he stopped working because his employer dismissed him for reasons unrelated to his health. In his functional report, Rodriguez asserted that his conditions limited his ability to work because he was disoriented, could not cope with stress, and suffered from insomnia. He stated that he was very depressed, stayed in bed most of the day and did not leave his house often. He explained that his conditions limited his communication skills, memory, concentration, understanding, and completion of tasks.

2

Rodriguez's friend and roommate, Yohan Torres ("Torres"), completed a third-party function report, stating his observations that Rodriguez's conditions limited his ability to work because he was not able to perform well in a social environment. Torres also explained that Rodriguez's close friends noticed that Rodriguez had changed significantly since the onset of his conditions. Torres reported that Rodriguez performed light housework, went grocery shopping, handled money, and spent time with family and close friends.

The Commissioner denied Rodriguez's claim initially and on reconsideration. Rodriguez requested a hearing before an ALJ. At the hearing in October 2017, Rodriguez's counsel amended his disability onset date to August 19, 2015. Rodriguez testified that he had completed his high school education in Cuba, had never married, and did not have children. He stated that he previously worked in supermarkets and similar stores stocking merchandise and that he held these jobs from 2002 to 2012. He explained that his psychiatric problems began around the time his long-term partner raped his 12-year-old nephew. He stated that he began hearing voices, he enjoyed nothing, had no desires, slept very little during the night, did not enjoy being around other people, and mainly reclined during the day. At the time of the hearing, he lived with his mother, who did most of the cooking and cleaning for him. He admitted to using social media and playing video games on his phone, drinking alcohol when he was desperate and smoking

3

cigarettes.  He testified that he could not work because he did not have the desire to do anything and at times he gave "bad responses to people."  (R. Doc. 14 at 40–49.)

A vocational expert ("VE") testified that Rodriguez previously worked as a warehouse worker, which equated to medium level work.  The ALJ asked the VE to assume a hypothetical: whether an individual of Rodriguez's age, education, and work history, who was limited to simple, routine and repetitive tasks that were not conducted at production rate pace, only had occasional interaction with supervisors, co-workers, and the public and did not engage in tasks concerning the safety and welfare of others, could perform Rodriguez's past work as a warehouse worker.  The VE responded that the individual could perform such work.  The ALJ also asked the VE to assume the same hypothetical scenario, but the individual was off task 20% of the day.  The VE responded that such an individual would not be able to maintain employment.  Rodriguez's attorney questioned the VE and asked her to assume the same hypothetical individual described by the ALJ, but with the limitations described by Dr. Carlos Danger, a consultative psychiatrist: that Rodriguez had mild limitations in understanding, remembering, and carrying out simple instructions and that he had marked limitations with more complex instructions, interacting with others, and responding appropriately to usual work

4

situations.  The VE admitted that such an individual, with these limitations, would not be able to engage in substantial gainful activity.  (R. *Id.* at 49–53.)

The ALJ also had medical evidence in the record postdating Rodriguez's application.  This evidence showed that on August 19, 2015, Rodriguez visited Vivian Gonzalez-Diaz, Ph.D. for a consultative psychological examination at the request of the state agency.  At the exam, Rodriguez reported loss of energy, lack of motivation to perform tasks or chores, increased appetite, difficulties concentrating, feelings of worthlessness, occasional auditory hallucinations, lack of motivation to get out of bed at times, tremors at times, passive death wishes at times, and weekly panic attacks characterized by an abrupt period exhibiting accelerated heart rate, tremulousness, and sweatiness. (R. *Id.* at 357–60.) Rodriguez stated that his symptoms began four years before, when his ex-partner sexually abused his nephew.  Rodriguez denied suicidal thoughts and did not complain of delusions but stated that he had daily auditory hallucinations.

Dr. Gonzalez-Diaz reported that Rodriguez's behavior, attitude, and cooperation were adequate.   Dr. Gonzalez-Diaz observed that Rodriguez was fully oriented in all spheres with goal-oriented associations, that his mental status examination revealed appropriate speech, a depressed mood, congruent affect, full orientation, logical associations and thought processes, normal stream of thought, and mild preoccupation and worries for his nephew.  Dr. Gonzalez-Diaz diagnosed

Rodriguez as having low average intelligence and noted that his attention and concentration were adequate. He diagnosed Rodriguez with major depressive disorder, recurrent and severe, with psychotic features; tobacco use disorder, severe; and ruled out bipolar disorder, depressed type. He listed Rodriguez's prognosis as fair/guarded. (R. *Id.*)

The medical evidence also included a Psychiatric Review Technique form ("PRTF") completed by Dr. Jennifer Meyer, Ph.D., a psychologist. The form indicated that Rodriguez had no restriction of activities of daily living, mild difficulties in maintaining social function, moderate difficulties in maintaining concentration, persistence or pace, and no repeated episodes of decompensation. In an accompanying Mental Residual Functional Capacity form, Dr. Meyer opined that Rodriguez had moderate limitations in his abilities to understand and remember detailed instructions; to carry out detailed instructions; to maintain attention and concentration for extended periods; to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and to respond appropriately to changes in the work setting. She further stated that Rodriguez would have difficulty responding to high-stress and fast-paced work environments, but he appeared capable of completing simple, repetitive tasks and adapting to simple, gradual changes in the work environment.

(R. Doc. 14 at 66–76.)  In connection with a second state agency review of Rodriguez's file, Dr. George Grubbs, a state agency psychological consultant, affirmed Dr. Meyer's opinions and statements.  (R. *Id.* at 81–90, 91–100.)

The medical evidence also included a report from Dr. Geraldine Mattia, a psychiatrist with Jackson Health System.  Rodriguez visited Dr. Mattia for treatment for his depression, which he disclosed began after his ex-partner molested a relative.  Dr. Mattia noted that Rodriguez had a history of major depression with psychotic features.  He observed Rodriguez to be withdrawn and tearful, prescribed medication, and directed him to return.  Rodriguez visited Dr. Mattia again, complaining of occasional poor sleep.  Dr. Mattia noted that Rodriguez had coherent and relevant speech.  Rodriguez saw Dr. Mattia again two months later, complaining of poor sleep, anger, and irritability.  Dr. Mattia believed that an increase in one of the prescriptions would help because Rodriguez was difficult, had limited insight and judgment, a paucity of words, and a high degree of irritability.  (R. *Id.* at 364–70.)

When Rodriguez returned to Jackson Health System in July 2016, Louis Antoine, M.D., reported that Rodriguez's condition was stable.  He had normal orientation, normal activity, fair eye contact, broad affect, logical thoughts, and no suicidal thoughts.  In September 2016, Rodriguez went to Jackson Behavioral Health Outpatient for a follow-up on his major depression, and an advanced

7

practice registered nurse met with him and noted that Rodriguez exhibited labile affect and mood, was angry, verbally explosive, and biting his nails.  In November 2016, Dr. Antoine reported that Rodriguez was less agitated, was oriented with fair eye contact, had logical thoughts, no delusions, and no suicidal ideas.  In January 2017, Rodriguez reported increased depression due to a recent family member's death.  Dr. Antoine documented that Rodriguez had regular orientation and activity, fair eye contact, a broad affect, a normal mood, logical thought processes, no delusions, and fair judgment.  In March, Rodriguez saw Dr. Antoine, who noted that Rodriguez's judgment and insight appeared fair and he had no suicidal ideas.  Because Rodriguez reported no side effects from his medications, Dr. Antoine directed him to continue them.  (R. *Id.* at 380–96.)

In April 2017, Rodriguez had a consultative psychiatric examination with Carlos Danger, M.D., at the request of the ALJ.  Rodriguez reported feelings of anxiety, unwellness, depression, thoughts of helplessness and hopelessness, low self-esteem, difficulty functioning and maintaining a job, and auditory hallucinations.  Dr. Danger noted that Rodriguez was taking multiple medications that made diagnosis on the bipolar spectrum a possibility.  Dr. Danger stated that although Rodriguez may have exaggerated his symptoms, Rodriguez appeared to have an underlying psychiatric illness that interfered with employability.  Following the examination, Dr. Danger opined that Rodriguez had mild limitations

in understanding, remembering, and carrying out simple instructions and that he had marked limitations with more complex instructions, interacting with others, and responding appropriately to usual work situations. Dr. Danger completed an accompanying Mental Medical Source Statement of Ability to do Work-Related Activities wherein he stated that, among other things, Rodriguez exhibited "marked" limitations in his abilities to carry out complex instructions, make judgments on complex work-related decisions, interact appropriately with the public, with supervisors, and with coworkers, and respond appropriately to usual work situations and to changes in routine work setting. (R. *Id.* at 372–76.)

In May 2017, Rodriguez met with Dr. Antoine, who reported that Rodriguez had no marked limitations. In July, however, Rodriguez informed Dr. Antoine that he was continuing to hear voices, was agitated, had mood swings, anxiety, paranoia, difficulty sleeping, and nightmares. Dr. Antoine documented that Rodriguez had moderate limitations with normal orientation, logical thought process, and a stable mental status. Dr. Antoine directed Rodriguez to continue his medications. In September, Rodriguez reported to Dr. Antoine that he was not doing well because a recent hurricane had knocked out his electricity and he was afraid of the dark. Dr. Antoine documented that Rodriguez's mental status examinations revealed moderate limitations with normal orientation, logical thought process, fair insight and judgment, and a stable mental status. Dr. Antoine

also noted that Rodriguez exhibited fair eye contact, labile affect, dysphoric mood, obsessional thought process, and paranoid delusions.  (R. *Id.* at 392–96, 417–18.)

## II.

After the hearing, the ALJ denied Rodriguez's applications, concluding that he was not disabled.  The ALJ applied the five-step sequential approach set forth in the regulations and found that Rodriguez had not engaged in substantial gainful activity since the alleged onset date and that he had severe impairments of affective mood disorder with psychosis and anxiety disorder (steps one and two).  At step three, the ALJ found that Rodriguez did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

The ALJ assessed Rodriguez's residual functional capacity ("RFC") (defined in 20 C.F.R. § 404.1545 as "the most you can still do despite your limitations"), to determine if he could perform his past relevant work (step four). The ALJ concluded that Rodriguez had the RFC to perform a full range of work at all exertional levels and limited him to simple, routine, and repetitive tasks, but not at production rate pace; only occasional interaction with supervisors, coworkers, and the public; and no tasks involving the safety and welfare of others.  The ALJ found that Rodriguez's allegations were inconsistent with his mild objective medical findings, his daily activities, and the opinions of the state agency

psychological consultants.  The ALJ considered the treatment records of the doctors and explained that she did not give great weight to Dr. Danger's opinion because Rodriguez's medical examinations did not reveal he was as limited as Dr. Danger opined.  The ALJ gave weight to the opinions of Drs. Meyer and Grubbs, finding their opinions consistent with Rodriguez's medical evidence.  After assessing the RFC, the ALJ utilized the testimony of the VE to determine that Rodriguez could still perform his past work despite his impairments.  Hence, the ALJ concluded that Rodriguez was not disabled as defined in the Social Security Act from his alleged onset date through the date of the decision.

Rodriguez requested review of the ALJ's decision, but the Appeals Council denied his request.  Subsequently, Rodriguez filed a complaint in federal district court, seeking judicial review of the Commissioner's decision.  Rodriguez moved for summary judgment, arguing that the ALJ improperly assessed the medical opinions, that the ALJ failed to evaluate properly his paragraph B criteria and assess his RFC, and that the ALJ improperly assessed his subjective symptoms. The Commissioner opposed the motion and moved for summary judgment.

In its R&R, the magistrate judge recommended that the district court deny Rodriguez's motion for summary judgment and grant the Commissioner's motion for summary judgment.  The magistrate judge concluded that substantial evidence supported the ALJ's evaluation of the opinion evidence in the record, and it

11

supported the ALJ's evaluation of Dr. Danger's opinion because he was a consultative physician and his opinion was not entitled to the same deference as a treating physician's opinion.  The magistrate judge found that the ALJ did not err in affording great weight to Drs. Meyer's and Grubbs's opinions because they were consistent with Rodriguez's treatment records.  The magistrate judge also concluded that the ALJ's paragraph B criteria findings and RFC determination were supported by substantial evidence, in part, because the ALJ relied on Rodriguez's treatment notes.  The magistrate judge lastly concluded that the ALJ's evaluation of Rodriguez's subjective complaints was supported by substantial evidence because the ALJ relied on Rodriguez's treatment notes to find that his description of his symptoms was not consistent with the medical evidence.

Rodriguez objected to the R&R, reiterating his arguments from his motion for summary judgment.  He also objected on the basis that the ALJ should have accorded more deference to Dr. Danger's opinion.  The district court overruled both objections, adopted the R&R, granted the Commissioner's motion for summary judgment, and denied Rodriguez's motion for summary judgment. Rodriguez filed a timely appeal.

### III.

In Social Security appeals, we review the Commissioner's decision for substantial evidence and its application of legal principles *de novo*.  *Moore v.*

*Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, ___ U.S. ___, ___, 139 S. Ct. 1148, 1154 (2019). Substantial evidence requires more than a scintilla of evidence and is such relevant evidence as a reasonable person would accept as sufficient to support a conclusion. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). "A preponderance of the evidence is not required." *Hunter v. Comm'r of Soc. Sec. Admin.*, 808 F.3d 818, 822 (11th Cir. 2015). "A court may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner]." *Id.* (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). Thus, so long as the Commissioner's decision is supported by substantial evidence, the court will defer to the decision, even if the evidence may preponderate against it. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004). The substantial evidence threshold "is not high" and defers to the presiding ALJ, who heard testimony and reviewed the medical evidence. *Biestek v. Berryhill*, ___ U.S. at ___, 139 S. Ct. at 1157.

## IV.

A. Whether substantial evidence supports the ALJ's evaluation of opinion evidence from Rodriguez's medical record

On appeal, Rodriguez argues that the ALJ failed to articulate the weight she accorded to Drs. Mattia's and Antoine's opinions, accorded inadequate weight to Dr. Danger's opinion, and accorded too much weight to Drs. Meyer's and Grubbs's opinions. Specifically, Rodriguez contends that the ALJ did not accord any weight to the opinions of his treating physicians, and this court cannot conduct a meaningful review because the ALJ did not state clearly the weight, if any, accorded to their opinions. Rodriguez also claims that the ALJ did not provide substantial evidence to support her decision to give Dr. Danger's opinion only partial weight, and the ALJ failed to explain how the evidence was inconsistent with his opinions. Furthermore, Rodriguez argues that the ALJ did not provide any examples of how Drs. Meyer's and Grubbs's opinions were more consistent with the treatment records than Dr. Danger's opinions. Thus, Rodriguez asserts that the ALJ committed reversible error.

The Commissioner responds that the ALJ fully considered the medical opinions in the record and properly explained the weight she gave to each opinion. The ALJ relied on the treatment notes of Drs. Mattia and Antoine to determine that Rodriguez could perform work within his RFC. Although Rodriguez challenges the ALJ's consideration of these treatment notes, he does not point to an actual opinion by these doctors that was inconsistent with the ALJ's RFC finding. The Commissioner further contends that the ALJ properly considered Dr. Danger's

14

opinion and gave it partial weight because he was a non-treating physician and his

opined limitations were not supported by Rodriguez's medical examinations.

Additionally, the Commissioner claims that the ALJ properly gave weight to Drs.

Meyer's and Grubbs's opinions because their opinions were consistent with the

medical evidence. Thus, the Commissioner asserts that the record in its entirety

supports the ALJ's decision.

In evaluating an individual's eligibility for SSI benefits, the Commissioner

considers medical opinions from acceptable medical sources, including licensed

physicians and licensed psychologists. 20 C.F.R. § 404.1502(a) (2012).[1] Medical

opinions are "statements from acceptable medical sources that reflect judgments

about the nature and severity of [a claimant's] impairment(s), including [his]

symptoms, diagnosis and prognosis, what [he] can still do despite impairment(s),

and [his] physical or mental restrictions." *Id.* at §§404.1527(a)(2), 416.927(a)(2)

(2012). In determining an individual's eligibility for DIB, the Commissioner

considers the medical opinions and evidence in the record and generally gives

more weight to an opinion from a treating source because the treating source is

"likely to be the medical professional[] most able to provide a detailed,

longitudinal picture" of the individual's medical impairment. *Id.* at §

---

[1] We cite to the relevant year's rules that were in effect at the time of the ALJ's decision and before the 2017 amendments.

404.1527(c)(2) (2012).  Indeed, if the Commissioner finds a treating source's opinion on the nature and severity of an impairment is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the Commissioner will give the opinion "controlling weight." *Id.*

On review, an ALJ is not required to refer to every piece of evidence in her decision. *See Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005). Nevertheless, the ALJ must clearly articulate reasons for giving less weight to a treating physician's opinion, and the failure to do so is reversible error, unless the correct application of the regulations would not contradict the ALJ's ultimate findings. *See Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983). "We will not second guess the ALJ about the weight the treating physician's opinion deserves so long as he articulates a specific justification for it." *Hunter*, 808 F.3d at 823.

Based on our review of the record, we conclude that substantial evidence supports the ALJ's evaluation of the opinion evidence in Rodriguez's medical record.  Drs. Mattia's and Antoine's treatment notes constituted medical opinions because they recorded the nature and severity of Rodriguez's impairments, and his symptoms, diagnosis, and prognosis.  20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). Because the ALJ failed to articulate the weight she assigned to their opinions, she arguably erred in this respect; however, any error was harmless.  The physicians'

16

findings did not contradict the ALJ's conclusion that Rodriguez was not disabled. Their treatment notes indicated that Rodriguez had fair judgment, insight, and logical thought process, and that he was responding well to treatment. In addition, their treatment notes did not provide any findings as to possible work-related limitations that Rodriguez might encounter, but rather support the ALJ's finding that Rodriguez was able to perform simple, routine tasks and engage in structured interactions with others. Significantly, Rodriguez does not identify any of Drs. Mattia's and Antoine's opinions that are inconsistent with the ALJ's finding.

We also conclude that substantial evidence supports the weight that the ALJ accorded to Dr. Danger's opinion. As a consultative physician, Dr. Danger was not entitled to the same deference that an ALJ would accord to a treating physician. 20 C.F.R. § 404.1527(c)(1)-(4); § 404.1527(c)(2). Some of Rodriguez's treatment notes undercut the severity of the limitations that Dr. Danger described and explain the ALJ's decision to give partial weight to Dr. Danger's opinion. Indeed, the ALJ relied on those treatment notes to determine that Rodriguez's limitations were not as severe as Dr. Danger opined and to adjust his range of work to exclude working at production rate pace or performing tasks involving the safety and welfare of others.

We also conclude that the ALJ did not err in according Drs. Meyer's and Grubbs's opinions great weight. The ALJ's determination was consistent with

Rodriguez's treatment notes because those notes revealed that he had fair judgment and insight, logical thought process, and was responding well to his treatment. Drs. Mattia, Antoine, and Danger also noted the same in their treatment notes. Additionally, Drs. Meyer's and Grubbs's opinions were consistent with Rodriguez's treatment notes that indicate he was not limited to the severity that he described. Accordingly, based on the record, we affirm the district court's order in this respect.

B. Whether substantial evidence supports the ALJ's paragraph B criteria ratings and evaluation of Rodriguez's RFC

On appeal, Rodriguez argues that substantial evidence does not support the ALJ's finding regarding his RFC at step four because the ALJ's rationale was entirely inconsistent with Dr. Danger's opinions about his RFC. Rodriguez also challenges the ALJ's reliance on Drs. Meyer's and Grubbs's opinions because they did not examine him, and he argues that because the ALJ's determination regarding his paragraph B ratings is inaccurate, the ALJ's RFC assessment is invariably flawed as well.

The Commissioner responds that the ALJ fully evaluated Rodriguez's condition using the PRTF, and the ALJ supported her ratings when she discussed Rodriguez's daily activities, which did not support greater restrictions/limitations. The Commissioner also posits that Rodriguez's medical records support the ALJ's

ratings, and, importantly, Rodriguez does not identify what limitations were missing from his RFC. Thus, because the ALJ considered the entire record and provided substantial evidence to support her assessment of Rodriguez's RFC, the Commissioner urges this court to affirm as to this issue.

Social Security regulations outline a five-step, sequential evaluation process to determine whether an individual is disabled. *See* 20 C.F.R. § 404.1520(a)(4). The ALJ must evaluate whether (1) the individual engaged in substantial gainful activity; (2) the individual has a severe impairment; (3) the severe impairment meets or equals an impairment in the Listing of Impairments; (4) the individual has the RFC to perform past relevant work; and (5) in light of the individual's RFC, age, education, and work experience, there are other jobs the individual can perform. *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004) (citing regulations). If the ALJ determines that the individual is not disabled at any step of the evaluation process, the inquiry ends. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The RFC is "that which an individual is still able to do despite the limitations caused by his or her impairments." *Phillips*, 357 F.3d at 1238. The ALJ makes this determination by considering the individual's ability to lift weight, sit, stand, push, pull, etc. 20 C.F.R. § 404.1545(b). The individual's residual functional capacity is then used to determine his or her capability for performing

19

various designated levels of work, such as sedentary, light, medium, heavy, and very heavy. *See id*. at § 404.1567. The ALJ considers all the record evidence in making the determination of the individual's RFC. *Phillips*, 357 F.3d at 1238.

Based on our review of the record, we conclude that substantial evidence supports the ALJ's findings regarding Rodriguez's paragraph B criteria and his RFC at step four. The medical evidence showed that Rodriguez could care for himself, could prepare simple meals and perform housework, venture out of his home alone, and handle money. The medical evidence also noted that Rodriguez was consistently oriented to all spheres during his mental status examinations. Rodriguez did not report side effects from his medications, and Drs. Mattia, Antoine, and Danger noted that he was responding well to his treatment. As to the RFC, the ALJ discussed the treatment notes, noted that Rodriguez had not been hospitalized for his mental disorder, and that his daily activities reflected that he could function independently. The ALJ specifically accounted for the mild limitations that Rodriguez presented by limiting his RFC to exclude working at production rate pace or performing tasks involving the safety and welfare of others. Accordingly, based on the foregoing, we affirm the district court's order as to this issue.

C. Whether substantial evidence supports the ALJ's evaluation of Rodriguez's subjective allegations

Rodriguez asserts on appeal that the ALJ failed to assess properly his alleged symptoms because his description of his symptoms was consistent with the medical evidence. The Commissioner responds that the ALJ properly applied the standard for reviewing Rodriguez's subjective complaints and that Rodriguez's statements concerning the intensity, persistence, and functionally limiting effects of his symptoms were inconsistent with the medical evidence. The Commissioner posits that the ALJ articulated explicit, adequate reasons for her findings, and that Rodriguez fails to cite evidence from the medical record that allegedly supports his allegations. In sum, the Commissioner contends that the ALJ properly considered the entire record and provided substantial evidence to support her evaluation of Rodriguez's subjective allegations.

"In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *see also* 20 C.F.R. § 416.929(a). "If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so." *Wilson*, 284 F.3d at 1226. "Failure to articulate the reasons for discrediting subjective testimony requires, as a

21

matter of law, that the testimony be accepted as true." *Id.* Additionally, "credibility determinations are the province of the ALJ, and [a court] will not disturb a clearly articulated credibility finding supported by substantial evidence." *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014).

Based on our review of the record, we conclude that the ALJ's determination that Rodriguez's symptoms were not as severe as he alleged is supported by substantial evidence. Rodriguez's treatment notes indicate that he had fair judgment and insight, logical thought process, and was responding well to his treatment. Moreover, the treatment notes undercut his description of his symptoms that he attested to during the hearing before the ALJ. In addition, his former roommate stated that Rodriguez was able to function independently, with only minor limitations. Accordingly, we conclude that substantial evidence supports the ALJ's evaluation of Rodriguez's subjective symptoms, and we affirm the district court's order on this issue as well.

We conclude from the record that substantial evidence supports the ALJ's determination that Rodriguez is not disabled. Accordingly, based on the aforementioned reasons, we affirm the district court's order adopting the magistrate judge's R&R granting summary judgment to the Commissioner on Rodriguez's claims for SSI benefits and DIB.

**AFFIRMED**.