NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-1760
_____

JEFF S. PEARSON,

Appellant

v.

COMMISSIONER OF SOCIAL SECURITY
_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. No.1-18-cv-01137)
District Judge:  Hon. Leonard P. Stark
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
November 16, 2020

Before:  JORDAN, KRAUSE, and RESTREPO, *Circuit Judges.*

(Filed: December 2, 2020)
_____

OPINION*
_____

---

* This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

JORDAN, *Circuit Judge*.

Jeff Pearson appeals the District Court's order affirming the Commissioner of Social Security's denial of his claim for disability insurance benefits ("DIB") under Title II of the Social Security Act ("Act"). Pearson argues that substantial evidence does not support the Administrative Law Judge's conclusion that he was not disabled during the relevant period. We disagree and will affirm.

## I.    BACKGROUND

Pearson seeks DIB because, he says, back and hip impairments have precluded him from continuing to work as an attorney since the end of 2009. In 1994, he was in a car accident, which caused traumatic disc herniation. One year later, he received epidural steroid injections, but they did not afford him much relief. An MRI taken in February 2002 revealed mild progression of degenerative changes in his back condition. In 2003, he returned to his doctor, complaining of severe back pain.

Pearson stopped working on December 31, 2009. In November 2010, an x-ray of his hip showed he had an abnormal femoral head and signs of aseptic necrosis. In January 2012, nurse practitioner Louise Diehl found that Pearson could not walk a block at a reasonable pace on rough or uneven surfaces and that it was medically necessary for him to use a cane. She indicated that he could, at most, sit for one hour and stand or walk for twenty minutes without interruption. She certified that Pearson could not perform any full-time job.

Pearson's "date last insured", or when his disability insurance expired, was March 31, 2013. In August 2013, Pearson reported to Dr. Anuradha Amara that "[h]e

2

ambulates well without any support" and "is active with all activities ... of daily living." (R. at 400-01.) In September 2013, Dr. Stephen Boone examined Pearson, finding that his back was nontender and his right hip appeared normal. In November 2013, Dr. Boone noted that Pearson walked unassisted in the doctor's office and that "[h]e usually walks unassisted but occasionally uses a cane." (R. at 466.) In February 2014, Dr. Bruce Lutz found Pearson did not need treatment for his back condition, but referred him to Dr. James Zurbach to evaluate surgical options for his worsening hip condition.

On July 1, 2014, over a year after Pearson's date last insured, Dr. Zurbach recommended hip replacement surgery. Pearson had a first hip replacement in August 2015 and a second hip replacement in January 2016. In December 2016, Dr. Zurbach noted that Pearson was severely limited in his ability to walk, and Dr. Brian Perry concluded that Pearson was unable to work.

Two state agency medical consultants reviewed the medical evidence and opined that Pearson could stand and walk for four hours and sit for about six hours in an eight-hour workday in the relevant time period, or the time period between when Pearson stopped working and when his disability insurance expired. At the administrative hearing on his claim for DIB, Pearson testified that, during the relevant time period, he could alternate between sitting for 45 minutes to an hour and standing for twenty minutes, but would have to lie down for twenty minutes when he experienced muscle spasms. A vocational expert testified that a hypothetical person with Pearson's physical limitations, such as alternating standing and sitting every twenty minutes, could perform Pearson's past work. The Administrative Law Judge ("ALJ") also posed a different hypothetical

3

question, adding an additional limitation of being off-task for fifteen percent of the work day, to which the expert responded that no jobs would be available for that hypothetical person in the national economy.

The ALJ found that Pearson was not disabled under the Act from December 31, 2009, the alleged onset date, through March 31, 2013, the date last insured. The ALJ concluded that Pearson could perform sedentary work, but that he needed to alternate between sitting and standing in twenty- to thirty-minute intervals. Those limitations, the ALJ decided, would allow Pearson to perform his past relevant work as an attorney. The Appeals Council denied Pearson's request for review.

Pearson appealed the Commissioner's denial of benefits to the District Court, *Pearson v. Saul*, No. 18-1137, 2020 WL 1248199, at *1 (D. Del. Mar. 16, 2020), and moved for summary judgment, making essentially the same arguments he repeats here. *Id*. at *7. The Court denied the motion and granted the Commissioner's cross-motion for summary judgment, affirming the ALJ's decision that denied Pearson's DIB claim. *Id.* at *1. This timely *pro se* appeal followed.

## II.    Discussion[1]

### A.    Governing Law

We uphold an agency's factual findings if they are supported by substantial evidence. 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019). Substantial evidence means enough relevant evidence that "a reasonable mind might

---

[1] We have appellate jurisdiction pursuant to 28 U.S.C. § 1291. The District Court had jurisdiction under 42 U.S.C. § 405(g).

4

accept as adequate to support a conclusion." *Biestek*, 139 S.Ct. at 1154 (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). The threshold for substantial evidence is "not high[,]" requiring "more than a mere scintilla" of evidence. *Id*. (quoting *Consol. Edison Co.*, 305 U.S. at 229).

Title II of the Act provides DIB to people who contributed to the program and who have a disability. 42 U.S.C § 423(a)(1). Congress defined "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id*. § 423(d)(1)(A). A claimant is disabled "only if" his impairment is so severe that he not only cannot engage in his previous work but "cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423(d)(2)(A).

There is a five-step analysis to determine whether a person is disabled. 20 C.F.R. § 404.1520. First, the Commissioner considers whether the claimant is involved in any substantial gainful activity. *Id*. § 404.1520(a)(4)(i). If not, step two requires an analysis of the severity of the claimant's impairment(s). *Id*. § 404.1520(a)(4)(ii). At step three, the Commissioner compares the claimant's severe impairment "to a list of impairments presumed severe enough to preclude any gainful work" ("the Listings"). *Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999); 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant's impairment is not listed, the Commissioner considers at step four whether the claimant retains the residual functional capacity ("RFC") to perform his past relevant

5

work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant can return to his past relevant work, he is not disabled. *Id*. Should the claimant successfully demonstrate he is unable to return to his past relevant work, the fifth step requires the Commissioner to determine whether the claimant's impairment precludes him from adjusting to other work. *Id*. § 404.1520(a)(4)(v). The Commissioner classifies the type of work the claimant may do based on physical exertion requirements, ranging from sedentary work to very heavy work. *Id*. § 404.1567.

The claimant bears the burden of establishing that he "became disabled at some point between the onset date of disability and the date that [his] insured status expired." *Zirnsak v. Colvin*, 777 F.3d 607, 612 (3d Cir. 2014); *see* 42 U.S.C § 423(a)(1)(A); 20 C.F.R. § 404.131. While evidence generated after a claimant's date last insured can shed light on his condition during the insured period, that evidence does not necessarily compel the Commissioner to conclude that the claimant's condition during the insured period was as severe as it became after the date last insured. *See Zirnsak*, 777 F.3d at 614 (holding the ALJ did not err in giving little weight to an assessment of claimant's "*current* mental status," conducted over two years after date last insured).

When considering evidence of disability, "treating and examining physician opinions often deserve more weight than the opinions of doctors who review records[.]" *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). But an ALJ need not give a treating physician's opinion controlling weight if it is inconsistent with other evidence in the record. *See* 20 C.F.R. § 404.1527(c)(2). For claims filed before March 27, 2017, the treating physician rule did not encompass opinions of a nurse

6

practitioner. *Id*. §§ 404.1502(a)(7); 404.1527(a)(1-2), (c)(2). Further, the ALJ is not bound by the conclusion of a treating physician that the claimant is disabled or unable to work, as that decision is the ALJ's to make. *Id*. § 404.1527(d)(1); *Chandler*, 667 F.3d at 361.

When a claimant offers evidence to the courts that was not presented to the ALJ, that evidence may not be used to challenge the ALJ's decision on substantial evidence grounds. *Matthews v. Apfel*, 239 F.3d 589, 594 (3d Cir. 2001). But, pursuant to the sixth sentence of 42 U.S.C. § 405(g) ("sentence six"), we may order remand if the evidence is new, material, and good cause is shown for failure to present the evidence originally. *Id*. Evidence is not "new" if it is "merely cumulative of what is already in the record." *Szubak v. Sec'y of Health & Human Servs.*, 745 F.2d 831, 833 (3d Cir. 1984). To be material, there must "be a reasonable possibility that the new evidence would have changed the outcome" of the determination. *Id*.

### B.    Pearson's Arguments

Pearson makes three arguments. First, he argues that his hip and back injuries constitute a listed impairment at step three. Second, he contends that substantial evidence does not support the ALJ's step-four conclusion that he can perform his past relevant work. Central to his argument is his assertion that the ALJ violated the treating physician rule when he failed to give controlling weight to the opinion of nurse practitioner Diehl. Third, he argues that we should remand his case pursuant to sentence six because he

possesses new evidence that he did not previously submit to the Commissioner. We

consider each in turn.

### i. The Step Three Conclusion

Pearson says that the ALJ erred in finding his impairment did not meet or equal a

listed impairment in the musculoskeletal system category at step three.[2] The ALJ

considered listing 1.02, "[m]ajor dysfunction of a joint(s),"[3] but concluded that the record

did not contain evidence satisfying the listing's requirement that the claimant be unable

to ambulate effectively. Pearson says that nurse practitioner Diehl's 2012 assessment

proves otherwise. Although Diehl checked a box which could support a finding of an

inability to ambulate,[4] the ALJ concluded that Diehl's assessment was "not supported by

the other medical evidence." (R. at 31.) The ALJ cited Dr. Amara's August 2013 exam

notes stating Pearson "ambulates well without any support" and "is active with all

activities ... of daily living." (R. at 400-01, 31.) In addition, the ALJ gave only limited

weight to Diehl's assessment because her findings were not accompanied by exam notes,

---

[2] To satisfy the severity requirements for a musculoskeletal system disorder under the Listings, a claimant must be unable "to ambulate effectively on a sustained basis for any reason, including pain associated with the underlying musculoskeletal impairment[.]" 20 C.F.R. Pt. 404, Subpt. P, App. 1. Examples of ineffective ambulation include the inability to walk without two canes, "the inability to walk a block at a reasonable pace on rough or uneven surfaces," or "the inability to carry out routine ambulatory activities, such as shopping and banking." *Id*.

[3] The ALJ also considered listing 1.04, "[d]isorders of the spine[,]" but concluded the record did not show evidence meeting the criteria under this listing.

[4] Diehl indicated that Pearson could not "walk a block at a reasonable pace on rough or uneven surfaces[.]" (R. at 700.)

8

while exam notes from Dr. Boone described normal ambulation. Substantial evidence thus supports the ALJ's conclusion that Pearson's impairment did not meet or equal a listing at step three.

### ii. The Step Four Conclusion

Next, Pearson contends that substantial evidence does not support the ALJ's conclusion that he had the RFC to perform his past work as an attorney as generally performed. In his findings, the ALJ first discussed the medical evidence which supported some of Pearson's allegations, such as an x-ray showing possible necrosis of the hip in 2010. While Drs. Zurbach and Perry noted that Pearson was severely impaired, the ALJ gave their conclusions minimal weight because they evaluated Pearson several years after the date last insured. The ALJ concluded that, during the period between the alleged onset date and date last insured, little to no evidence of limitations related to his back and hip impairments supported a finding that Pearson was as limited as now alleged.[5] For example, Pearson eventually had hip replacement surgeries, but the surgeries occurred more than two years after his date last insured and suggest that his hip issues deteriorated after the relevant time period. Several months after the date last insured, Drs. Amara and Boone noted that Pearson ambulated well, and Dr. Boone found that he had a nontender back, although he did complain of pain. The ALJ considered the measures Pearson pursued to alleviate his symptoms, including that Pearson did not continue to receive

---

[5] Pearson argues his medical record is sparse during the relevant time period because he could not afford more extensive treatment until he obtained Medicaid in 2012. But Pearson's medical records from 2012 and 2013 remained sparse, and do not support his allegations of severe limitations.

9

epidural injections during the relevant period. Overall, it is clear the ALJ comprehensively evaluated Pearson's medical records and treatment history in reaching his conclusion.

Pearson contends that the ALJ should have given Diehl's 2012 documentation controlling weight under the treating physician rule. But for claims brought before March 2017, such as Pearson's, an ALJ was not required to give controlling weight to a treating nurse practitioner's medical opinion. *See* 20 C.F.R. §§ 404.1502(a)(7); 404.1527(a)(1-2), (c)(2). And even if Diehl were viewed as a treating physician, that does not mean her opinion was entitled to controlling weight, as the ALJ found it to be inconsistent with other evidence in the record. *See* 20 C.F.R. § 404.1527(c)(2). While the ALJ considered Diehl's opinions, giving them some weight, he decided that her assessment of inability to ambulate contradicted other evidence and that her conclusion regarding Pearson being unable to work did not bind him. *See* 20 C.F.R. § 404.1527(d)(1).

Significantly, the ALJ found that Pearson had more limited exertional abilities than Diehl and the state agency medical consultants had concluded. The ALJ concluded that Pearson could perform sedentary work, the least physically exertional category, only if he could alternate between sitting and standing in twenty- to thirty-minute intervals. In January 2012, Diehl found that Pearson could, at most, stand or walk for twenty minutes and sit for one hour without interruption and could stand and walk, respectively, for a total of one hour in an eight-hour work day. The state agency medical consultants opined that Pearson could stand and walk for four hours and sit for about six hours in a workday.

10

The ALJ concluded that Pearson's limitations were more severe and required more frequent intervals of sitting and standing, but that Pearson could perform past relevant work as an attorney.

Pearson also says that the vocational expert who testified at his hearing supported the finding that he lacked the RFC to work. In contrast, the ALJ credited the vocational expert's testimony that a person with Pearson's limitations (as ultimately assessed by the ALJ) would be capable of performing his past work as an attorney, as that job is described by the Dictionary of Occupational Titles. The ALJ's subsequent hypothetical question about a person who would be off-task fifteen percent of the time, does not bind him to the premise of the question, nor to the expert's answer that such a hypothetical person would not be capable of performing past work. Instead, the ALJ's first hypothetical question captured the RFC the ALJ later determined for Pearson. *See Zirnsak*, 777 F.3d at 614 (explaining an ALJ must include all "credibly established limitations" in a hypothetical to a vocational expert to credit the expert's answer). In conclusion, substantial evidence supported the ALJ's finding that Pearson's RFC allowed him to perform his past work as an attorney. *Biestek*, 139 S.Ct. at 1154.

### iii.     Alleged New, Material Evidence

Third and finally, Pearson argues that we should remand his case for a new hearing under sentence six of 42 U.S.C. § 405(g) because he has new, material evidence. The evidence he seeks to introduce includes a comprehensive pain report, prescription records of opioid pain medication, and a 2009 treatment record. Pearson has not

established good cause for why he failed to timely submit that evidence to the ALJ. *See* 42 U.S.C. § 405(g). That alone is a sound basis to deny remand.

To the extent Pearson argues that the decision by the Department of Education ("DOE") in 2018 to discharge his student loans due to his disability compels a sentence-six remand, his argument is also unavailing.[6] A disability determination by another government agency is entitled to substantial weight. *Kane v. Heckler*, 776 F.2d 1130, 1135 (3d Cir. 1985). To qualify for a DOE disability discharge, the applicant must be unable to engage in any substantial gainful activity due to physical impairment that has lasted, or can be expected to last, for a continuous period of at least five years. U.S. Dep't of Educ., Federal Student Aid Office, Disability Discharge Description, https://studentaid.gov/manage-loans/forgiveness-cancellation/disability-discharge. Pearson alleges the DOE granted his disability discharge in November of 2018. Even if the DOE had determined that Pearson was disabled for the five years leading up to November of 2018, as opposed to determining that his disability would last five years beginning in November 2018, the period of disability would still not extend as far back as Pearson's date last insured.[7] Thus, there is no reasonable possibility that the DOE's disability discharge would change the ALJ's determination. *See Szubak*, 745 F.2d at 833

---

[6] It is unclear whether Pearson argues the DOE's 2018 student loan discharge is new evidence warranting remand or should have been considered by the ALJ. Because the ALJ could not have considered evidence not yet in existence, we consider that evidence in this sentence-six remand discussion.

[7] Pearson did not attach the DOE's disability discharge decision, so we do not know if the DOE decided whether Pearson had been, or would be, disabled for five years.

("An implicit materiality requirement is that the new evidence relate to the time period for which benefits were denied, and that it not concern evidence of a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition.").

III.  **CONCLUSION**

For the foregoing reasons, we will affirm the Judgment in favor of the Commissioner of Social Security and against Pearson entered by the District Court.