NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued July 7, 2022
Decided August 11, 2022

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

THOMAS L. KIRSCH II, *Circuit Judge*

No. 21-2204

| | |
|---|---|
| CHAD DUCHARME, *Plaintiff-Appellant*, | Appeal from the United States District Court for the Western District of Wisconsin. |
| *v.* | No. 3:20-cv-356 |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, *Defendant-Appellee*. | Barbara B. Crabb, *Judge*. |

**O R D E R**

Chad DuCharme challenges the denial of his application for disability insurance benefits and supplemental security income. After a hearing, an administrative law judge found him not disabled, and the district court upheld the ALJ's decision. Because the ALJ's ruling is supported by substantial evidence, we affirm.

In March 2016, 34-year-old DuCharme stopped working as a full-time plumber's apprentice after developing lung issues. Six months later, he received a diagnosis of chronic interstitial lung disease. Following this diagnosis, his physician determined that

he could not return to his plumbing job and cleared him only for sedentary work. In October 2016, DuCharme applied for disability insurance benefits and supplemental security income.

Nearly a year later, in August 2017, DuCharme received another diagnosis: a herniated disc. He reported lower back pain that radiated down his leg. Later that year, he informed his doctor of worsening back pain and difficulty finding a comfortable position whether sitting or standing. His orthopedic doctor gave him a steroid injection and prescribed him ibuprofen and gabapentin. DuCharme reported minimal alleviation from these treatments.

The following spring, DuCharme's back pain increased after he injured himself lifting a transmission. This injury led to severe pain in his right leg and numbness in his right foot. DuCharme underwent surgery in June 2018, receiving a lumbar fusion and discectomy. He did not seek additional medical treatment for his back pain after July 2018.

Shortly after his back surgery, DuCharme began experiencing pain in his right elbow. Based on this elbow pain, DuCharme was diagnosed with post-traumatic osteoarthritis stemming from a prior forearm fracture. He received elbow surgery and injections in late 2018.

In March 2019, the ALJ held a hearing on DuCharme's application. At the hearing, DuCharme amended his onset date to August 1, 2017, the date when he was diagnosed with a herniated disc, and added both his disc and elbow conditions on top of his lung disease as conditions supporting his application. DuCharme testified about each of his three conditions. First, for his lung condition, he testified that it was worsening despite medication and that it caused him to often feel dizzy and to be unable to walk more than 15 to 20 feet before needing to sit down. Second, DuCharme described his herniated disc, reporting that he had consistent pain in his back, could not drive more than 30 miles before needing to stop and stretch, and could not sit more than 15 minutes before needing to stand, walk, or lie down. Last, DuCharme testified to his ineffective elbow treatments and the pain that remained post-surgery.

Apart from DuCharme, the ALJ heard testimony from a vocational expert. The ALJ asked the expert whether jobs existed in which someone with DuCharme's limitations could work. The ALJ offered various hypotheticals to which the vocational expert provided feedback. The vocational expert testified that someone with DuCharme's limitations could perform three jobs: order clerk (8,000 job openings nationally); document preparer (15,000 jobs nationally); and inspector (8,000 jobs nationally).

The ALJ applied the standard five-step analysis in concluding that DuCharme was not disabled from August 1, 2017, to the date of the decision in March 2019. 20 C.F.R. §§ 404.1520(a), 416.920(a). Between steps three and four, the ALJ found that DuCharme had the residual functional capacity (RFC) to perform sedentary work with limitations. The ALJ found that DuCharme could only occasionally climb ramps and stairs, balance, stoop, kneel, crouch, crawl, reach overhead with his right upper extremity, and have exposure to workplace hazards; never climb ladders, ropes, and scaffolds; never be exposed to fumes, odors, dust, and pulmonary irritants; and needed to shift positions from standing to sitting and vice versa every 30 minutes for 1–3 minutes while remaining on task. At step four, the ALJ found that DuCharme could not perform his past relevant work. And at step five, the ALJ found that a significant number of jobs were available in the national economy that DuCharme could perform. As a result, the ALJ found DuCharme not entitled to disability insurance benefits or supplemental security income and denied his application. DuCharme sought review of this denial first from the SSA Appeals Council and, after the Council denied his request, from the district court, which affirmed the ALJ's decision. This appeal followed.

We review the ALJ's decision directly, applying a deferential standard of review. *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021). We "will uphold the ALJ's decision if it uses the correct legal standards, is supported by substantial evidence, and builds an accurate and logical bridge from the evidence to the ALJ's conclusion." *Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020) (citations omitted and cleaned up); see 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). DuCharme contends that the ALJ erred by providing an unwarranted RFC assessment, making erroneous credibility findings, and concluding that a significant number of jobs existed in the national economy that he could perform.

First, DuCharme challenges the ALJ's RFC determination because, in his view, the ALJ improperly "played doctor" in assessing the pain from his herniated disc. Based on this pain, the ALJ provided limitations in the RFC for DuCharme to change positions from standing to sitting or vice versa every 30 minutes, not every 15 minutes as DuCharme had testified was necessary. DuCharme contends that, because the state consulting physicians had not reviewed his medical records after June 2017, review by another medical expert was necessary before the ALJ could reach an appropriate RFC based on his back pain.

But the ALJ properly relied on DuCharme's medical records and on opinions from his treating physicians in reaching its conclusion and had no need for an additional consulting physician's review of the records. See *Thomas v. Colvin*, 745 F.3d

802, 808 (7th Cir. 2014) ("[T]he determination of a claimant's RFC is a matter for the ALJ alone—not a treating or examining doctor—to decide."). And the ALJ's review of DuCharme's medical records for pain relating to his herniated disc was thorough. The ALJ considered that his mild to moderate herniation on the nerve of his L5 disc did not require (and that DuCharme declined to have) surgery until after he injured himself lifting heavy transmission machinery in May 2018. The ALJ noted that an MRI taken after the injury but before surgery (DuCharme's briefs mistakenly describe this MRI as having been taken *after* his surgery) showed that his condition had worsened and his gait had been severely affected. After his lumbar fusion and discectomy surgery, however, the ALJ noted that DuCharme could walk about a quarter of a mile twice daily with only minimal difficulty and drive without difficulty. The ALJ also cited DuCharme's initial post-surgery medical report stating that he had experienced a general drop in pain after the surgery. And the ALJ mentioned follow-up reports showing that DuCharme suffered from no "radicular pain" and only "intermittent back discomfort." These facts are substantial evidence to support the ALJ's RFC conclusion.

Next, DuCharme challenges the ALJ's conclusion that his testimony about the intensity, persistence, and limiting effects of his symptoms was "not entirely consistent" with the medical evidence, citing three examples in the ALJ's decision that he thinks improperly addressed his subjective symptoms. First, DuCharme thinks that the ALJ erred in finding a portion of his hearing testimony—that his pain caused him to stop his floor-installation work after less than a month—inconsistent with record evidence. The ALJ explained that the record showed that DuCharme "worked part-time as a floor installer from September 2017 through April 2018," which "seem[ed] inconsistent" with his testimony that he "only laid flooring twice" over the course of one month. We think the record sufficient to support the ALJ's finding. On August 10, 2017, DuCharme reported an increase in back pain when bending, twisting, and walking. Three weeks later, he told his physician that he was working as a floor installer. Seven months later, in March 2018, his physician reported that he "is hesitant about reporting his work" given his disability claims. In April 2018, a healthcare provider recorded that he "works in remodeling residential and commercial businesses." And the only work DuCharme mentioned having during this period in his testimony to the ALJ was this flooring job. The ALJ's inconsistency finding here was thus supported by substantial evidence.

Second, DuCharme disputes the ALJ's description of his daily activities (duck hunting, bowling, softball, household chores, riding a tractor, walking, driving) and its apparent "insinuat[ion]" that DuCharme's subjective pain was inconsistent with these activities. DuCharme contends that his ability to perform these activities does not mean he was not disabled. But the ALJ did not even make an adverse finding based on these activities, let alone deny him disability benefits for that reason. The ALJ simply

described these activities in its subjective symptom analysis, which is exactly what ALJs are supposed to do. See 20 C.F.R. § 404.1529(c)(3)(i) (requiring ALJ to consider a claimant's daily activities in subjective-symptom analysis).

Third, DuCharme argues that the ALJ's subjective symptom analysis did not follow Social Security Ruling 16-3p. Under SSR 16-3p, an ALJ assessing the intensity, persistence and limiting effects of an individual's symptoms must consider several factors. But DuCharme has not pointed to any specific factor the ALJ ignored or improperly analyzed, and, after reviewing the ALJ's decision, we see no omission or error.

DuCharme last contends that the ALJ erred at step five. He argues that the ALJ failed to adequately explain how 31,000 (the total of the vocational expert's projected available jobs) constitutes a significant number of jobs in the national economy.

At step five, "the agency bears the burden of demonstrating that there are significant numbers of jobs in the national economy for someone with the claimant's abilities and limitations." *Ruenger v. Kijakazi*, 23 F.4th 760, 761 (7th Cir. 2022) (per curiam). The Commissioner is only responsible for "providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [the claimant's] residual functional capacity and vocational factors." 20 C.F.R. § 416.960(c)(2). ALJs typically rely on vocational experts to list jobs in the national economy that claimants can perform. After the vocational expert provides an opinion on the number of jobs available, it's up to the ALJ to determine whether that number is significant. And we review the ALJ's answer—as a factual finding—under the deferential substantial evidence standard. *Ruenger*, 23 F.4th at 763.

DuCharme first contests the ALJ's finding that 31,000 jobs is significant nationally. But we've already affirmed an ALJ's finding that 30,000 jobs was significant, *Mitchell v. Kijakazi*, 2021 WL 3086194, at *2 (7th Cir. July 22, 2021), and other courts have held that similar numbers "fit[] comfortably" within what courts have deemed significant, *Moats v. Comm'r of Soc. Sec.*, --- F.4th ----, 2022 WL 2965629, at *3 (6th Cir. July 27, 2022) (affirming finding that 32,000 jobs nationally was significant and listing cases). DuCharme next contends that, even if significant nationally, the jobs number was not significant in his region. The relevant statutory language does not require consideration of the immediate area in which a claimant lives. See 42 U.S.C. § 423(d)(2) ("An individual shall be determined to be under a disability only if … he … cannot … engage in any other kind of substantial gainful work which exists in the national economy, *regardless of whether such work exists in the immediate area in which he lives*, or whether a specific job vacancy exists for him, or whether he would be hired if he

applied for work.") (emphasis added). And although the statute then defines "work which exists in the national economy" to "mean[] work which exists in significant numbers either in the region where such individual lives or in several regions of the country," *id.*, it's clear that the statement about jobs "in the region where such individual lives or in several regions of the country" aims to avoid counting jobs that exist in only a few regions of the country where the claimant doesn't live (think of a commercial coffee farming job when coffee can be grown in less than a handful of states). See 20 C.F.R. § 404.1566(b) ("Isolated jobs that exist only in very limited numbers in relatively few locations outside of the region where you live are not considered 'work which exists in the national economy'"). There's no evidence in the record that any of the three jobs listed by the vocational expert (order clerk, document preparer, or inspector) are geographically concentrated outside of Wisconsin.

In any event, even if we were to accept DuCharme's invitation to take a closer look at the number of available jobs in his region, we lack any factual support to find that the ALJ erred. DuCharme (who was represented by counsel below) did not ask for the vocational expert's views on the availability of such jobs in his region and failed to argue anything relating to step five to the ALJ. With no relevant factual development in the record, we can only speculate. DuCharme thinks we can get around that problem by adopting his back-of-the-envelope calculations: Wisconsin's population makes up only 1.8% of the nation's total population, so he thinks only 1.8% of the 31,000 jobs (558) are available in his state. We decline to address such factual matters on appeal without record support.

AFFIRMED