NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued January 26, 2021
Decided March 23, 2021

*Before*

DIANE S. SYKES, *Chief Judge*

FRANK H. EASTERBROOK, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

No. 20-1551

| | |
|---|---|
| VICKI L. BRUMBAUGH, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Northern District of Indiana, |
| | Fort Wayne Division. |
| *v.* | |
| | No. 1:19-cv-082 JD |
| ANDREW M. SAUL, | |
| Commissioner of Social Security, | Jon E. DeGuilio, |
| *Defendant-Appellee*. | *Chief Judge*. |

**O R D E R**

Vicki Brumbaugh applied twice for Social Security disability benefits. Her first application in 2013 was granted but only for a limited period because the administrative law judge ("ALJ") determined that as of October 2014, Brumbaugh was able to perform a full range of sedentary work. Brumbaugh applied again in 2015, and a different ALJ determined that by then Brumbaugh was able to perform light work with some limitations. The district court upheld the decision, and Brumbaugh appealed. Because substantial evidence supports the second ALJ's decision, we affirm.

## I. Background

### A. First Disability Application

In 2010 Brumbaugh tore her left rotator cuff. She experienced chronic pain and significant functional deficits until she had surgery on both shoulders (on the left due to the tear and on the right due to overuse) in 2014. The surgeries were successful; by January 2015 the orthopedic surgeon reported that Brumbaugh had regained full range of motion and nearly full strength.

In February 2013 Brumbaugh applied for disability insurance benefits in connection with her shoulder injury. On March 27, 2015, an ALJ determined that Brumbaugh was temporarily disabled from September 13, 2010 (when she quit her job) to October 24, 2014 (when her doctor lifted all activity restrictions). During that period, Brumbaugh could do only sedentary work that did not require use of her left arm— limitations that precluded her from holding a job. As of October 25, 2014, however, Brumbaugh's conditions had improved; she had regained the use of her left arm, enabling her to perform the full range of sedentary work. The ALJ determined that Brumbaugh's temporary disability ended on that date.

### B. Subsequent Medical History

In May 2015 Brumbaugh complained to an orthopedic surgeon about renewed pain in her left shoulder. The doctor noted full range of motion but administered an injection of medication to the affected shoulder and advised her to follow up "as needed." Brumbaugh returned to the surgeon in January 2016 complaining of pain in both shoulders from hanging Christmas decorations; this time she received injections in both shoulders. Dr. Bret Kueber, her primary-care physician, treated Brumbaugh with shoulder injections in June 2016 and mid-2017 (the last shoulder-treatment record).

Meanwhile, Brumbaugh regularly saw Dr. Kueber about her weight-loss efforts. She rarely mentioned other issues during these visits, but on four occasions she complained of pain in her left knee. Initially Dr. Kueber injected pain medication into Brumbaugh's knee; later, Jessica Sleesman, a nurse practitioner in Dr. Kueber's office, prescribed an oral pain medication. X-rays of the knee were unremarkable.

During this time, Brumbaugh obtained four opinions about her medical condition. In February 2016 Dr. Carolyn Greer, an independent disability evaluator, examined her. Dr. Greer noted that Brumbaugh reported pain from overusing her

shoulders, displayed a limited range of motion, and required injections and pain medication. She also reported that Brumbaugh had normal abilities in all other areas, except for some numbness in the fingers of her left hand when overused. And Dr. Greer advised that Brumbaugh would benefit from occupational therapy for her shoulders, her knee issue appeared resolved, and she may have some nerve damage in her left arm.

That same month Dr. Bruce Whitley reviewed Brumbaugh's medical records on behalf of Indiana's Disability Determination Bureau. He determined that only her shoulder problems were severe and, even so, she could work at a light exertional level with no overhead reaching. In April 2016 Dr. Jonathan Sands, another consulting physician, concurred with Dr. Whitley's assessment.

Finally, in October 2016 Nurse Practitioner Sleesman stated in a one-page letter—without referring to any medical records—that Brumbaugh had "a long history of back and shoulder pain," for which she had undergone surgery, and that she was no longer able to see her orthopedic surgeon "due to insurance." Sleesman opined that sitting for long periods would cause "acute exacerbation" of Brumbaugh's "chronic and progressive" pain and that her prognosis was poor.

## C. Second Disability Decision

Brumbaugh applied a second time for disability benefits on November 24, 2015, alleging a disability beginning on February 17, 2010. A newly assigned ALJ held a hearing and concluded that Brumbaugh was not disabled. The ALJ declined to consider whether she was disabled prior to March 27, 2015, the date of the earlier decision finding a temporary disability. That decision, the ALJ concluded, had res judicata effect, precluding reconsideration under the applicable regulations. *See* SOC. SEC. ADMIN., HEARINGS, APPEALS, & LITIG. LAW MANUAL, § I-2-4-40 (last updated Aug. 13, 2020), https://www.ssa.gov/OP_Home/hallex/I-02/I-2-4-40.html. Using March 27, 2015, as the starting point, the ALJ found that Brumbaugh's shoulder issues and obesity were severe impairments, although neither met nor equaled a listing of a presumptively disabling condition. The ALJ also found that Brumbaugh had the residual functional capacity for light work, *see* 20 C.F.R. § 404.1567(b), except that she could only occasionally reach overhead or crawl and could never climb ladders, ropes, or scaffolds.

In explaining the determination that Brumbaugh could perform light work, the ALJ pointed to inconsistencies between the medical evidence and Brumbaugh's statements about the limiting effects of her conditions. The record showed that although

Brumbaugh had a history of pain in her shoulders and left knee, her doctors were able to control her symptoms with conservative treatments such as medications and injections. There were also significant periods during which Brumbaugh did not seek treatment, and although Brumbaugh alleged that she could not afford to do so during those periods due to insurance issues, the ALJ noted that she failed to show that she had explored "all possible resources (e.g., clinics, charitable and public assistance agencies, etc.)."[1] Further, most of Brumbaugh's visits with Dr. Kueber, her primary-care physician, focused on weight-management efforts, not on ongoing musculoskeletal issues. And Brumbaugh continued to perform activities consistent with basic work functions; for example, according to her testimony at the hearing, Brumbaugh cared for her two-year-old granddaughter for six hours each day.

The ALJ gave great weight to the evaluations of Drs. Whitley and Sands, the agency consultants, because their opinions that Brumbaugh could perform light work were consistent with the medical records. The ALJ gave little weight to Nurse Practitioner Sleesman's opinion because he found it "vague, speculative, and conclusory," and Sleesman did "not cite relevant supporting medical evidence … [or] specify [Brumbaugh's] functional limitations or capabilities."

The ALJ determined that because Brumbaugh was limited to light work, she could not perform her past work as a machine operator. But based on the testimony of a vocational expert, the ALJ concluded that Brumbaugh was capable of performing a significant number of jobs in the national economy, such as launderer or packager. A district judge upheld that decision, and Brumbaugh appealed.

## II. Discussion

We will uphold an ALJ's ruling if substantial evidence supports it. 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek*, 139 S. Ct. at 1154 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Our review is deferential; we will not reweigh the evidence or

---

[1] A claimant's lack of insurance may excuse a failure to consistently seek treatment, *see, e.g.*, *Jelinek v. Astrue*, 662 F.3d 805, 814 (7th Cir. 2011), and we have never required that a claimant show that she has exhausted all forms of charity while attempting to obtain treatment. Brumbaugh, however, does not challenge this aspect of the ALJ's decision, so we do not address it further.

substitute our judgment for the ALJ's, even if reasonable minds could differ on the disability determination. *L.D.R. v. Berryhill*, 920 F.3d 1146, 1152 (7th Cir. 2019).

Brumbaugh first contends that the ALJ failed to account for her obesity when determining her residual functional capacity. Obesity, she claims, exacerbates her knee problems and constrains her "from standing and more." This argument is flawed from the start because the ALJ did, in fact, acknowledge Brumbaugh's obesity. He found that it qualified as a severe impairment, although not so severe as to meet the criteria of a listing. He also stated that he "considered the effects of [Brumbaugh's] obesity in reducing [her] residual functional capacity." And he noted that much of Brumbaugh's recent medical care "focused on [her] weight management efforts."

Further, Brumbaugh's assertion that her obesity causes functional limitations is merely speculative. As the district judge pointed out, Brumbaugh's level of obesity, by itself, does "not correlate with any specific degree of functional loss." SSR 02-1p, 2002 WL 34686281, at *2 (Sept. 12, 2002). And the medical records do not show that she suffers from any obesity-induced limitations. She points to a specific visit with Dr. Kueber as evidence that her obesity impairs her mobility. But at that visit the doctor simply noted that Brumbaugh was attempting to lose weight by walking daily. Brumbaugh does not point to any other evidence undermining the ALJ's conclusion that her obesity does not cause any physical impairments.

Brumbaugh next argues that the ALJ erred by giving Nurse Practitioner Sleesman's opinion little weight while giving "great weight" to the opinions of Drs. Whitley and Sands, the agency consultants who did not examine her. Had the ALJ properly credited Sleesman's opinion, Brumbaugh contends, he would have been compelled to find that her condition deteriorated after the first ALJ's decision.

The ALJ's assessment of Sleesman's opinion was sound. As the district judge correctly noted, nurse practitioners were not acceptable medical sources for claims filed prior to March 27, 2017. *See* 20 C.F.R. § 404.1513(a) (2013). Accordingly, the ALJ needed only to provide sufficient explanation for his assessment of Sleesman's opinion to allow Brumbaugh to understand his reasoning. *See id.* § 404.1527(f)(2) (2020). The ALJ's decision meets that minimal standard. He explained that Sleesman's letter deserved little weight because it was "vague, speculative, and conclusory"; did not cite any relevant supporting medical evidence; and did not specify any functional limitations or capabilities. Brumbaugh does not dispute these findings except to say that the ALJ should have recognized that Sleesman's opinions were based on the entire record of treatment by the "Kueber team." Sleesman did not say as much, however, and the ALJ

was entitled to discount the opinion of a medical professional who did not explain the basis of her conclusion. *See Denton v. Astrue*, 596 F.3d 419, 424 (7th Cir. 2010).

As for the opinions of Drs. Whitley and Sands, the ALJ explained that he gave them greater weight because they *were* supported with citations to the medical record and were consistent with Dr. Greer's unremarkable clinical findings. *See* 20 C.F.R. § 404.1527(c)(3), (4). Brumbaugh counters that Dr. Whitley failed to address Dr. Greer's "number one assessment"—that given her continued muscle fatigue, she would benefit from occupational therapy on her shoulder. But Dr. Whitley, like Dr. Sands, found that Brumbaugh's ability to use her shoulders was limited, so they both recommended restricting the frequency of overhead reaching. The ALJ was entitled to rely on their opinions, and as we have often noted, it is not our role to reconsider the weight given to the various medical opinions. *See, e.g.*, *Chavez v. Berryhill*, 895 F.3d 962, 968 (7th Cir. 2018).

Finally, Brumbaugh argues that the second ALJ failed to build a "logical bridge" from the evidence to his determination that she is capable of light work. She contends that the ALJ should have explained what changed after the first ALJ's conclusion that she could do only sedentary work. This argument rests on a faulty premise: the "logical bridge" language in our caselaw is descriptive but does not alter the applicable substantial-evidence standard. *Biestek*, 139 S. Ct. at 1152.

The ALJ's decision is supported by substantial evidence because Brumbaugh's second claim suffers from a failure of proof. *See Eichstadt v. Astrue*, 534 F.3d 663, 668 (7th Cir. 2008) (noting that the claimant bears the burden of producing medical evidence sufficient to support a claim of disability). Since the first disability decision, Brumbaugh's health continued to improve; after two successful shoulder surgeries, the first ALJ determined that she was capable of a full range of sedentary work and therefore was not disabled. Thereafter, Brumbaugh complained only intermittently about shoulder pain induced by activity; her primary medical focus was weight loss. Although she also complained of knee pain on four occasions and received injections and prescription pain medication to treat it, she also reported walking "forever" in her effort to lose weight. And her physical examinations showed no limitations on her ability to walk and only minor range-of-motion limitations with her shoulders. Further, by February 2016 Dr. Greer opined that any leg issues were resolved. Thus, the ALJ kept some restrictions on her shoulder exertion in place but otherwise found her capable of "a good deal of walking or standing … or sitting most of the time with some pushing and pulling of arm or leg controls," as light work requires. 20 C.F.R. § 416.967(b).

Because none of Brumbaugh's challenges to the ALJ's decision have merit and the decision is supported by substantial evidence, we AFFIRM the judgment.