**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-1860
_____

GENOEFFA M. MELCHIONNA,
Appellant

v.

COMMISSIONER SOCIAL SECURITY
_____

On Appeal from the United States District Court
For the District of New Jersey
(D.C. No. 2-19-cv-19692)
District Judge:  Honorable Kevin McNulty
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
March 14, 2022

Before:   JORDAN, KRAUSE, and PORTER, *Circuit Judges*

(Filed: March 17, 2022)
_____

OPINION*
_____

JORDAN, *Circuit Judge*.

_____

   * This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

This appeal arises from Genoeffa Melchionna's application for Social Security disability insurance benefits. The administrative law judge ("ALJ") at the Social Security Administration denied part of her application, determining that, despite Melchionna's physical and cognitive impairments, she retained a residual functional capacity ("RFC") that would enable her to find work in the national economy. Melchionna appealed the partial denial to the District Court, arguing that parts of the ALJ's RFC determination were not supported by substantial evidence. The District Court affirmed the ALJ's decision. For the following reasons, we will vacate and remand.

## I.  BACKGROUND

Melchionna was a hairdresser and licensed cosmetologist. In April 2011, she was involved in a minor car accident. As a result of the accident, she began experiencing pain in her neck and lower back, and numbness in her hands. She was ultimately diagnosed with cervical and lumbar spine disc herniation with radiculopathy and bilateral carpal tunnel syndrome, all of which required surgeries. The car accident also caused her to experience multiple mental impairments, including anxiety, depression, post-traumatic stress disorder, and a mild cognitive disorder.

Despite undergoing the surgeries and extensive treatment, Melchionna continued to suffer pain and reduced range of motion in her spine and neck for the next several years. Melchionna's medical providers agreed that her continuing pain and physical limitations made it unlikely that she could return to her prior work as a hairdresser. They had differing opinions on the full extent of her physical and cognitive limitations.

2

In March 2013, Melchionna filed an application for disability insurance benefits. The ALJ denied her application, finding that she was not disabled. Although the ALJ determined that Melchionna's RFC was limited to performing sedentary work and that it precluded a return to her prior work as a hairdresser, she concluded that Melchionna could still perform other jobs in the national economy. After the agency's Appeals Council denied Melchionna's request for review of the ALJ's findings, Melchionna appealed to the District Court. The District Court remanded for the ALJ to clarify what was meant by the limitation on Melchionna's RFC that she "be given the ability to fidget about in her seat." (A.R. at 26, 1559.)

On July 6, 2017, while her application was on appeal, Melchionna fell down a staircase. That accident exacerbated her existing physical and cognitive ailments. She filed a second application for disability insurance benefits, which was combined with the remanded first application for consideration by another ALJ.

On remand, the ALJ found that Melchionna was disabled as of July 6, 2017, but not before that date. As before, the ALJ found that her RFC before July 2017 was limited to sedentary work. But this time, instead of saying that Melchionna needed to be able to "fidget about in her seat," the ALJ said that she needed to be able to "change positions while continuing to sit and work for 10 minutes every hour[.]" (A.R. at 1379.) The ALJ determined that, even though Melchionna's RFC left her unable to continue her work as a hairdresser, she still could have performed other jobs in the national economy, including that of a call-out operator. Melchionna appealed the partial denial to the District Court, which affirmed the ALJ's decision. She then filed this timely appeal.

3

## II. DISCUSSION[1]

An ALJ's decision must be "accompanied by a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). The ALJ must consider all evidence presented. *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000). "When a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (quoting *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir. 1993)). If there is evidence that contradicts his decision, the ALJ must "give some indication of the evidence which he rejects and his reason(s) for discounting such evidence." *Burnett*, 220 F.3d at 121. "In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Id.* (quoting *Cotter,* 642 F.2d at 705).

The ALJ here, applying 42 U.S.C. § 423(a)(1), had to determine whether Melchionna was disabled within the meaning of the Social Security Act. A "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any

---

[1] The District Court had jurisdiction under 42 U.S.C. § 405(g). We have appellate jurisdiction pursuant to 28 U.S.C. § 1291. "We review the ALJ's decision under the same standard of review as the District Court, to determine whether there is substantial evidence on the record to support the ALJ's decision." *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 118 (3d Cir. 2000). The substantial evidence standard requires "more than a mere scintilla[,]" meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "We review de novo the district court's determination as to whether the ALJ's decision was supported by substantial evidence." *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1320 (11th Cir. 2021).

medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" *Id.* § 423(d)(1)(A). A claimant is disabled only if her impairment is so severe that she cannot engage in her previous work nor "any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423(d)(2)(A).

The Social Security Administration's regulations instruct ALJs to conduct a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a). The only step at issue here is the fifth step, at which the ALJ must determine whether the claimant can perform any job in the national economy based on her age, education, work experience, and residual functional capacity. *Id.* §§ 404.1520(a)(4)(v), 404.1560(c). A claimant's RFC is "that which [he or she] is still able to do despite the limitations caused by his or her impairment(s)." *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999) (citing 20 C.F.R. § 404.1545(a)). The Social Security Administration classifies the type of work the claimant can do based on physical exertion requirements, ranging from sedentary work to very heavy work. 20 C.F.R. § 404.1567. In addition to that general classification, an ALJ's RFC determination often identifies more specific limitations to the claimant's exertional capabilities.

As mentioned, sedentary work is the least physically demanding classification of work in the national economy. *Id.* It mostly involves sitting, only occasionally requires walking and standing, and does not require lifting more than ten pounds. *Id.* § 404.1567(a). "A sedentary job should require no more than approximately 2 hours of standing or walking per eight-hour work day, and sitting should typically amount to six

5

hours per eight-hour work day." *Mason*, 994 F.2d at 1065. A sedentary job does not necessarily require that a claimant be able to sit for long stretches at a time. SSR 96-9p, 1996 WL 374185 (July 2, 1996) (explaining that "[a]n individual may need to alternate the required sitting of sedentary work by standing … periodically[,]" such as during breaks and a lunch period); *see also Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004) ("The regulations do not mandate the presumption that all sedentary jobs in the United States require the worker to sit without moving for six hours, trapped like a seat-belted passenger in the center seat on a transcontinental flight."). Still, the time spent during the workday must allow for approximately six hours of sitting. *Boone v. Barnhart*, 353 F.3d 203, 210 (3d Cir. 2003) ("[T]he requirement … that Boone's employment allow her the option to sit or stand at will every thirty minutes precludes her from performing 'the prolonged sitting contemplated in the definition of sedentary work[.]'" (quoting SSR 83-12, 1983 WL 31253 (Jan. 1, 1983))).

The ALJ here determined that Melchionna was capable of performing sedentary work prior to July 2017, but with numerous specific caveats. One of those limitations on her ability to perform sedentary work was that, "when seated," she needed to be able to "change positions while continuing to sit and work for 10 minutes every hour[.]" (A.R. at 1379.) Melchionna has challenged the ALJ's inclusion of that "change positions" limitation, among others, as being unsupported by substantial evidence.

We agree that the decisions of the ALJ and the District Court are without record support at least with respect to the "change positions" limitation. The only evidence that the ALJ cited in support of that limitation was the report of Dr. Susan Fuls. The ALJ

6

stated: "I also accord strong weight to Dr. Fuls' opinion … indicating that the claimant was seemingly capable of being on time and working, but needs to sit[,] stand[,] and change position every 10 to 15 minutes." (A.R. at 1392.) But the ALJ then acknowledged that "there was no real explanation given for the 10 to 15 minute switch of position." (A.R. at 1392.) Indeed, there was no explanation because Dr. Fuls never advanced that proposition. Her report instead stated that "[Melchionna's] physical (acute [and] chronic) back pain impair[s] her ability [to] sit for more than 10 min[utes] in a chair[.]" (A.R. at 999; *see also* A.R. at 995 (noting that Melchionna was "unable to sit in chair > 10 min at a time (has to stand + walk around)")).) Thus, Dr. Fuls's remarks that Melchionna could only sit for ten minutes contradict, rather than support, the ALJ's finding that Melchionna could sit continuously if given the ability to "change positions" in her seat for ten minutes every hour.

Nor was there any other evidence in the record to support that RFC limitation. In upholding the ALJ's "change positions" limitation, the District Court pointed to two other parts of the record, but neither provides the requisite substantial evidence. It first cited Melchionna's testimony from her initial hearing, which the District Court summarized by saying: "Melchionna herself testified that she could only sit for ten minutes before needing to 'fidget' to get into a comfortable position." (App. at 8.) But that is not quite what Melchionna said. Rather, the transcript reads:

> Q: And what about sitting, how long can you sit?
> A: I'm always in pain so 10 minutes that I fidget all the time just trying to get into a comfortable position.

(A.R. at 61.)  In other words, Melchionna did not say that she could sit for ten minutes, change positions, and then sit for longer.  Her comment is ambiguous but appears to be that she could sit for a maximum of ten minutes, the whole time trying (unsuccessfully) to get comfortable.  Like the ALJ's citation to Dr. Fuls's report, the District Court's citation to Melchionna's testimony appears to contradict, rather than support, the "change positions" limitation.

The District Court also pointed to a report by psychotherapist John Kramer.  During one of his 45-minute therapy sessions with Melchionna, Mr. Kramer observed that she "change[d] position in her chair every few minutes due to 'pain[.]'"  (A.R. at 1342.)  But a therapist's observation that Melchionna could sit uncomfortably for three-quarters of an hour does not adequately support a finding that she could sit continuously as long as she could change positions in her seat for ten minutes each hour, or that she could sit for six hours each workday.

Thus, the evidence cited for the disability determination does not constitute the substantial evidence necessary to support the ALJ's determination that Melchionna could perform sedentary work with the limitation of needing to "change positions while continuing to sit and work for 10 minutes every hour[.]"  (A.R. at 1379.)  To the contrary, the ALJ and the District Court appeared to be crediting, rather than rejecting, evidence that contradicts a key limitation included in the ALJ's RFC determination.  We will therefore remand so that the ALJ can provide "a clear and satisfactory explication" of the

8

evidence supporting her RFC determination, including what limitations (if any) Melchionna had on her ability to sit prior to July 2017. *Cotter*, 642 F.2d at 704.[2]

## III. CONCLUSION

For the following reasons, we will vacate the District Court's order and remand with instructions to return the case to the Commissioner of Social Security for further proceedings consistent with this opinion.

---

[2] It is not always reversible error for an ALJ to put additional restrictions on a claimant's RFC in a way that favors the claimant, even if those additional restrictions are not compelled by medical evidence. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361-62 (3d Cir. 2011) (affirming an RFC determination even after the ALJ "added restrictions [that the state's medical consultant] did not deem necessary"). In this case, however, we cannot conclude that the ALJ made such a claimant-friendly determination. The finding that Melchionna needed to be able to change positions while seated is closely intertwined with – and perhaps necessary for – the finding that she could sit long enough to perform sedentary work. Because the other limitations in the RFC are only applicable to the extent that Melchionna could still perform the least demanding classification of work, we do not now address her challenges to those other limitations.