In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

No. 22-1820

RENE MARTINEZ,

*Plaintiff-Appellant,*

*v.*

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

*Defendant-Appellee.*

———————————

Appeal from the United States District Court for the
Northern District of Indiana, Fort Wayne Division.
No. 20-cv-285 — **Robert L. Miller Jr.**, *Judge.*

———————————

ARGUED MAY 19, 2023 — DECIDED JUNE 29, 2023

———————————

Before FLAUM, ROVNER, and ST. EVE, *Circuit Judges.*

ST. EVE, *Circuit Judge.* This case concerns the denial of Rene Martinez's application for supplemental security income. An administrative law judge ("ALJ") found that although Martinez possessed particular physical and mental limitations, he was not disabled under the Social Security Act because he could perform work in certain jobs that existed in significant numbers in the national economy—for example, the work of

a checker, routing clerk, and mail sorter. Martinez filed suit in the district court challenging the ALJ's decision, and the district court affirmed. On appeal, Martinez argues that we must reverse the ALJ's decision because the ALJ relied on evidence belonging to a different claimant. We agree with Martinez—the ALJ's decision is not supported by substantial evidence because it relies on medical records belonging to someone other than Martinez and we are unable to determine whether that error was harmless.[1]

## I. Background

Martinez filed an application for supplemental security income in November 2017, alleging his disability began on November 22 of that year. After his application was denied initially and again on appeal, he requested a hearing on it before an ALJ. The ALJ reviewed the evidence in the record and found that Martinez suffered from severe impairments but could nonetheless "perform the requirements of representative unskilled occupations such as a checker, routing clerk, and mail sorter."

After the Appeals Council denied Martinez's request to review the ALJ's decision, Martinez filed suit in the district court. Before the district court issued its opinion, Martinez notified the Commissioner that the administrative record (specifically, several pages within exhibit B15F) included medical records regarding a different claimant. When the Commissioner filed the administrative record with the court, the Commissioner noted that it was the full record. The pages relating

---

[1] We need not address Martinez's other arguments because this issue alone requires a full remand.

to the other claimant were removed, however, and replaced with a placeholder reading: "THIS PAGE WAS REMOVED AS AN EXHIBIT BY THE APPEALS COUNCIL BECAUSE IT DOES NOT REFER TO THE CLAIMANT." Neither Martinez nor the district court saw a copy of the omitted pages. The Commissioner later refused to produce the pages after Martinez asked for them, claiming it would be inappropriate because they related to a different person.

Martinez moved the district court to compel the Commissioner to include the full exhibit in the administrative record. The district court denied that motion after concluding that the ALJ only cited the omitted pages twice, and, although its inclusion was an error, the error was harmless. According to the district court, the "omitted exhibit pages from exhibit B15F are chiropractic records of a patient other than Mr. Martinez" and "[t]he ALJ [only] cited the third-party records in exhibit B15F … as additional potential evidence that Mr. Martinez had an impairment." It further explained:

> The absence of the third-party records from the record won't harm the claimant on appeal: if substantial evidence on the record without the third-party records supports the ALJ findings, the court will affirm the Commissioner's decision, while the court will reverse or remand if substantial evidence on the record without the third-party records support the ALJ's decision. The administrative record isn't lacking so as to prevent this court from performing a meaningful review of the ALJ's decision.

The district court then went on to affirm the ALJ's decision and hold that it was supported by substantial evidence. Martinez timely appealed.

## II. Analysis

To determine whether one is disabled under the Social Security Act, the ALJ employs a familiar five-step test. *Fetting v. Kijakazi*, 62 F.4th 332, 336 (7th Cir. 2023) (describing the five steps). "The burden of proof is on the claimant for the first four steps. At step five, the burden shifts to the agency to show that 'there are significant numbers of jobs in the national economy for someone with the claimant's abilities and limitations.'" *Id.* at 336–37 (citations omitted). The ALJ determines whether the parties have met their burden by a preponderance of the evidence. 20 C.F.R § 404.953(a).[2]

"We review de novo the district court's judgment affirming the Commissioner's final decision, meaning we review the ALJ's decision directly." *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010) (citing *Moss v. Astrue*, 555 F.3d 556, 560 (7th Cir. 2009)). We review de novo the ALJ's legal decisions, and "[w]e review the ALJ's factual determinations deferentially and affirm if substantial evidence supported the decision." *Jones*, 623 F.3d at 1160. Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted). "The ALJ is not required to address

---

[2] Martinez alleges that the ALJ erred by failing to explicitly state this standard and improperly adopted a different standard because the ALJ found that Martinez's alleged impairments were "not entirely consistent" with evidence in the record. We disagree on both fronts. No law or regulation requires that the ALJ expressly state that its decision was based on the preponderance of the evidence; and although "entirely consistent" is not the standard, "[i]t is clear to us, given the context, that the ALJ merely used a polite way to say the weight of the evidence did not support all [Martinez's] claims." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021).

every piece of evidence or testimony presented, but must provide a 'logical bridge' between the evidence and the conclusions so that we can assess the validity of the agency's ultimate findings and afford the claimant meaningful judicial review." *Jones*, 623 F.3d at 1160.

## A. Records Belonging to a Different Claimant

Exhibit B15F includes medical records from another claimant. Although the exhibit is still in the record, the Appeals Council removed several pages. The first two pages of the exhibit are a May 21, 2019, letter from Martinez's treating physicians, Dr. Ronald Pancner and Dr. Paul Pancner. We are told that the next nine pages, however, were medical records of another claimant, and these pages were replaced with placeholders on appeal. The final five pages of the exhibit are again notes from Drs. Pancner regarding Martinez. Martinez argues that the ALJ's decision is not supported by substantial evidence because it relied on evidence that does not relate to him. We agree.

According to the Commissioner, although the inclusion of evidence relating to a different claimant is an error, the error is harmless because the ALJ only cited the other claimant's records as evidence that Martinez suffered from additional impairments. *See Wilson v. Comm'r of Soc. Sec.*, 280 F. App'x 456, 458 (6th Cir. 2008). Remand for consideration of Martinez's case without reference to these pages, therefore, would lead to the same result because the omission of these pages only decreases support for Martinez's claim of disability. *See Wilder v. Kijakazi*, 22 F.4th 644, 654 (7th Cir. 2022) ("We have repeatedly emphasized that 'the harmless error standard applies to judicial review of administrative decisions, and we will not remand a case to the ALJ for further specification

where we are convinced that the ALJ will reach the same re-
sult.'") (citation omitted). The district court agreed with the
Commissioner and denied Martinez's motion to compel. We
find that the record is insufficient to show that the errors were
harmless and therefore remand for the ALJ to reconsider Mar-
tinez's case without reference to the irrelevant pages.

The Commissioner contends that the ALJ only cited the re-
moved pages twice, but by our count, the ALJ cited exhibit
B15F seven times. In two instances, the ALJ's analysis is suffi-
ciently clear to allow us to definitively identify what page of
exhibit B15F the ALJ was referencing and whether the ALJ's
reference was harmless error. First, the ALJ stated that Mar-
tinez was only getting panic attacks "now and again." This
quote comes from Drs. Pancner's notes at the end of the ex-
hibit, which we know refer to Martinez and not the other
claimant. Because this cite refers to Martinez's medical rec-
ords, there is no error.

In a second instance, the ALJ cited certain chiropractic rec-
ords in exhibit B15F. Although these chiropractic records re-
lated to the other claimant, the ALJ cited them as showing that
Martinez had additional physical symptoms limiting his abil-
ity to perform work-related activities. The ALJ found these
findings unpersuasive because they were not supported by
the rest of the record. In this instance, the erroneous inclusion
of the irrelevant records provided evidence of additional im-
pairments. Their removal on remand would only decrease
support for Martinez's claim of disability. We thus agree with
the Commissioner that, at least with respect to this reference,
the ALJ's error here was harmless.

Aside from these two references, however, we cannot de-
termine whether the ALJ erred and whether this error was

harmless. Specifically, with regards to the other citations, the record is unclear as to whether the ALJ relied on the pages of exhibit B15F that referred to Martinez or pages that referred to the other claimant. Accordingly, we are left to speculate as to whether the ALJ was referring to something included in the now removed pages that related to a different claimant or was properly referring to Drs. Pancners' opinions regarding Martinez. And even if we could determine whether the ALJ was referring to something in the now removed pages, without knowing the content of those pages, we cannot determine whether the ALJ's reference was harmless error.

The pages at issue were included within an exhibit containing otherwise relevant medical records. Indeed, there are more pages that were removed than remain in the exhibit. If the records were in a separate exhibit, then we could assure ourselves that any cite to that exhibit was erroneous and could then better assess whether the ALJ's decision is nonetheless supported by substantial evidence. But that is not the case. Because the problematic pages were included within an exhibit containing some relevant medical records, and we are unable to review those pages to see what they contained, we are unable to assure ourselves that each cite to that exhibit was not erroneous.

We acknowledge that many of the cites to exhibit B15F reference the Drs. Pancners' treatment notes, potentially indicating that those cites were properly referring to the doctors' notes regarding Martinez, and not the chiropractic records relating to someone else. But without being able to see the records, we cannot even determine whether the only pages removed were chiropractic records, as the Commissioner claims. If the removed pages also included records relating to

one of Drs. Pancners' other patients, for example, then the references to treatment notes are of no help in determining whether the ALJ was relying on Martinez's records or someone else's.

Even if we could confidently determine whether the ALJ's references addressed the erroneously included medical records, we would then run into the problem of determining whether those references were nonetheless harmless. Assuming the Commissioner is correct that citing another claimant's records only as evidence of additional impairments is harmless error, the ALJ's decision here does not clearly indicate for what proposition the exhibit is cited. The first time the ALJ cited exhibit B15F, for example, the ALJ noted several alleged impairments, then said that these impairments were not supported by the record, citing exhibit B15F (in addition to seven other exhibits). We cannot determine whether the ALJ cited exhibit B15F as evidence of additional impairments (as the Commissioner alleges), or whether the ALJ cited it as evidence that Martinez's alleged impairments were not supported by the record. The former error would likely be harmless, but the latter error likely would not be. Our inability to determine which scenario this case falls into warrants remand.

For the foregoing reasons, the ALJ's decision is not supported by substantial evidence. The issues with this exhibit permeate the ALJ's findings regarding the medical opinion evidence, and the ALJ's findings regarding the symptom evidence that rely on its findings related to the medical opinions. For these reasons, we remand for the ALJ to re-evaluate both the symptom and medical opinion evidence and come to a decision based on evidence relevant only to Martinez.

**B. Martinez's Other Arguments**

Although our decision is based solely on the above issue, Martinez raised several additional arguments. While we do not decide whether any of these individual arguments alone would require remand, several of the ALJ's findings that Martinez identified give us pause.

**1. Struhart's Credibility**

Martinez argues that the ALJ improperly disregarded statements that his friend and roommate, Kirk Struhart, made in support of his application. Specifically, the ALJ found Struhart's statements unpersuasive in part because Struhart is not a doctor and is biased because he is Martinez's friend. Although the ALJ provided additional grounds for rejecting Struhart's statements—e.g., because they were inconsistent with his ability to perform various daily activities—neither being Martinez's friend nor Struhart's lack of medical experience are proper grounds to disregard his statements.

"The Social Security rules explicitly permit an ALJ to consider 'non-medical sources such as family and friends' when evaluating a claimant's statements about 'the intensity, persistence, and limiting effects of [his] symptoms.'" *Underwood v. Saul*, 805 F. App'x 403, 406 (7th Cir. 2020) (citing SSR 16-3p); *see also* 20 C.F.R. § 416.929(c)(3) ("The information that your … nonmedical sources provide about your pain or other symptoms … is also an important indicator of the intensity and persistence of your symptoms."). Although "[t]here must be objective medical evidence from an acceptable medical source that shows you have a medical impairment(s)," that is "considered with all of the other evidence (including statements about the intensity and persistence of your pain or

other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings)." 20 C.F.R § 416.929(a).

**2. Martinez's Failure to Follow Treatment Recommendations**

The ALJ noted that because Martinez still smokes, despite his doctor suggesting that he quit, "he is not fully compliant with treatment recommendations." The ALJ's decision here does not explain the relevance of Martinez's inability to kick the habit. After stating that Martinez is not compliant, the ALJ says nothing more about his failure to quit smoking. The ALJ's failure to explain this finding was problematic. *See Jones*, 623 F.3d at 1160 (noting ALJ's "must provide a 'logical bridge' between the evidence and the conclusions so that we can assess the validity of the agency's ultimate findings and afford the claimant meaningful judicial review").

The Commissioner claims that "the ALJ cited Mr. Martinez's continued smoking simply to support her conclusion that the evidence did not substantiate the severity of pain and degree of functional limitations he alleged." Such a finding, however, would be improper under our case law. *See Shramek v. Apfel*, 226 F.3d 809, 813 (7th Cir. 2000) (denouncing an "ALJ's conclusion that [a claimant's] smoking rendered incredible her allegations of pain because no medical evidence linked her chest pain directly to her smoking") (citing *Rousey v. Heckler*, 771 F.2d 1065, 1069 (7th Cir. 1985)). We have recognized that people "continue to smoke, not because they do not suffer gravely from the disease, but because other factors such as the addictive nature of the product impacts their ability to stop." *Id.* For this reason, a claimant's failure to quit smoking

"is an unreliable basis on which to rest a credibility determination." *Id.*

### 3. Martinez's Lack of Inpatient Treatment

The ALJ relied on Martinez's lack of inpatient psychiatric treatment to discredit Drs. Pancners' "statements concerning his panic attacks and anxiety impairing his ability to function, and ability to maintain employment due to his psychiatric and medical issues." But a lack of inpatient treatment does not necessarily indicate that a claimant "is therefore capable of gainful employment." *Voigt v. Colvin*, 781 F.3d 871, 876 (7th Cir. 2015); *id.* ("The administrative law judge went far outside the record when he said that if Voigt were as psychologically afflicted as [his doctor] thought, he 'would need to be institutionalized and/or have frequent inpatient treatment.'").

### III. Conclusion

For the foregoing reasons, we VACATE the judgment of the district court and REMAND the case to the agency for further consideration.