In the

# United States Court of Appeals

### For the Seventh Circuit

———————————

No. 23-3114

AMRA E. SCHMITZ,

*Plaintiff-Appellant,*

*v.*

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

*Defendant-Appellee.*

———————————

Appeal from the United States District Court for the
Central District of Illinois.
No. 3:22-cv-3068-CRL-KLM — **Colleen R. Lawless**, *Judge.*

———————————

ARGUED APRIL 9, 2024 — DECIDED DECEMBER 17, 2024

———————————

Before EASTERBROOK, ROVNER, and JACKSON-AKIWUMI,
*Circuit Judges.*

ROVNER, *Circuit Judge.* Plaintiff-appellant Amra Schmitz
appeals from the district court's decision sustaining the denial
of her application for Social Security disability benefits. She
argues that the Administrative Law Judge's determination
that she is not disabled lacks the support of substantial evi-
dence, because the vocational expert who testified that there

were multiple jobs that Schmitz could perform despite her limitations failed to disclose the sources supporting the expert's testimony as to the number of positions available in each of the jobs the expert identified. *See Biestek v. Berryhill*, 587 U.S. 97 (2019). We affirm.

**I.**

Schmitz is 52 years old; she formerly worked as a public relations representative. She applied for disability benefits in February 2020, alleging that she was disabled beginning in January 2018, when she was 45.

Following a telephonic evidentiary hearing, the ALJ applied the sequential five-step disability analysis specified by the administrative regulations and concluded that despite Schmitz's multiple limitations and her inability to perform her prior job, there was still work available to her that she could perform and therefore she was not entitled to disability benefits. R. 9 at 18–29. *See, e.g., Crowell v. Kijakazi*, 72 F.4th 810, 814–15 (7th Cir. 2023) (outlining the five-step inquiry); 20 C.F.R. §§ 404.1520(a), 416.920(a). At step one, the ALJ found that Schmitz had not engaged in substantial gainful activity since January 16, 2018, the date as of which she allegedly had become disabled. R. 9 at 20. The ALJ at step two found that Schmitz suffered from the following medically severe impairments: rheumatoid arthritis, degenerative changes to the cervical and lumbar spine, systemic lupus erythematosus, fibromyalgia, major depressive disorder, attention-deficit/hyperactivity disorder, and a history of alcohol and cannabis abuse. R. 9 at 19. However, at step three, the ALJ found that Schmitz did not have an impairment or a combination of impairments that met or medically equaled the severity of one of the impairments identified in the regulations as

establishing that one is disabled. R. 9 at 21–24. At step four, the ALJ found that Schmitz's impairments significantly limited her ability to perform basic work activity and that she could no longer perform her past relevant work as a public relations representative. R. 9 at 24–27. Despite the limitations, the ALJ also found at step five that Schmitz remained capable of performing light work (with certain exceptions), so long as she could learn the job in 30 days or less, needed only to make simple, work-related decisions, had only occasional contact with co-workers and supervisors, and faced only occasional changes to work processes and procedures. R. 9 at 24. The ALJ then proceeded to find, based in large measure on the testimony of vocational expert Brianne Lott, who holds a master of science degree in rehabilitation counseling, that in view of Schmitz's age, education, work experience and residual functional capacity, Schmitz could perform six types of unskilled light or sedentary jobs that were available in substantial numbers in the national economy: cafeteria attendant, cleaner-housekeeping, folder, final assembler, circuit board assembler, and sorter. R. 9 at 28–29. Having so found, the ALJ determined that Schmitz was not disabled and therefore was not entitled to benefits. R. 9 at 29.

After the Appeals Council denied review of the ALJ's decision, Schmitz filed suit in the district court, asserting that the ALJ's adverse decision was not supported by substantial evidence in multiple respects. As relevant here, Schmitz argued that substantial evidence did not support the ALJ's finding as to the jobs that Schmitz was qualified to perform notwithstanding her limitations, in that the vocational expert did not identify the sources for her testimony as to how many positions existed in the national economy for each of the six jobs that the expert (and the ALJ) found that she could perform.

The district court found that Schmitz had forfeited any such objection, in that her counsel had asked no questions of the vocational expert as to the foundation for her position estimates and had made no objection to the sufficiency of the vocational expert's testimony, whether at the hearing or in the post-hearing briefing. *Schmitz v. Kijakazi*, No. 22-cv-03068, 2023 WL 7984743, at *2–*3 (C.D. Ill. Sept. 21, 2023). The court went on to find that the expert's testimony was sufficiently reliable on its face in view of her expertise. *Id.* at *3–*4.

## II.

We review de novo the district court's decision upholding the denial of disability benefits to Schmitz. *E.g.*, *Chavez v. O'Malley*, 96 F.4th 1016, 1021 (7th Cir. 2024) ("*Chavez II*"). Thus, like the district court, we examine the ALJ's decision applying the same deferential standard that the district court did. *Martin v. Kijakazi*, 88 F.4th 726, 729 (7th Cir. 2023). We will reverse the ALJ's decision only if it is the result of an error of law or is unsupported by substantial evidence. *Id.* "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Biestek*, 587 U.S. at 103). Schmitz's appeal, as we have noted, focuses on the adequacy of vocational expert Lott's testimony as to the availability of positions in the national economy that Schmitz can perform, given the limitations resulting from her impairments.

However, the record makes plain that Schmitz posed no such objection to the testimony either at the hearing before the ALJ or in the post-hearing briefing. Only before the district court did Schmitz argue for the first time that the vocational expert's testimony was defective in that Lott did not cite her sources for the number of positions she estimated were

available in the national economy for each of the six jobs she had identified as being within Schmitz's capability to perform.

By not making a timely objection to the ALJ regarding Lott's analysis, Schmitz forfeited this objection. "[A] claimant who does not object to a VE's testimony during the administrative hearing forfeits those objections." *Fetting v. Kijakazi*, 62 F.4th 332, 337 (7th Cir. 2023) (citing *Brown v. Colvin*, 845 F.3d 247, 254 (7th Cir. 2016)). In the criminal context, this would mean that we review the objection for plain error. *E.g., United States v. Carlberg*, 108 F.4th 925, 929 (7th Cir. 2024). In the civil context, however, plain-error review is reserved only for the extraordinary case. *See Henry v. Hulett*, 969 F.3d 769, 786 (7th Cir. 2020) (en banc) (describing the "rare situation" in which plain-error review is available in civil cases); *Bronson v. Ann & Robert H. Lurie Children's Hosp. of Chicago*, 69 F.4th 437, 452 (7th Cir. 2023); *Walker v. Groot*, 867 F.3d 799, 802 (7th Cir. 2017).[1] This is not an extraordinary case.

It is true, as Schmitz argues, that the agency bears the burden at step five to show that there exist substantial numbers of jobs in the national economy that the claimant can actually do. *Martinez v. Kijakazi*, 71 F.4th 1076, 1079 (7th Cir. 2023). Yet, as we have previously observed, requiring a claimant to raise a timely objection to the sufficiency of a vocational expert's testimony does not improperly shift that burden to the claimant. *Leisgang v. Kijakazi*, 72 F.4th 216, 220 (7th Cir. 2023). A claimant cannot waive the substantial evidence standard. *Id.* (citing *Biestek*, 587 U.S. at 104). Thus, the ALJ retains the duty

---

[1] Federal Rule of Civil Procedure 51(d)(2) provides an exception for plain-error review of civil jury instructions.

in all cases to "hold the VE to account for the reliability of his job-number estimates," *id.* (quoting *Chavez v. Berryhill*, 895 F.3d 962, 970 (7th Cir. 2018)), and even in the absence of an objection, "the ALJ still cannot accept testimony from a VE that is facially implausible or incoherent, *id.* (citing *Brace v. Saul*, 970 F.3d 818, 822–23 (7th Cir. 2020). But assuming there are no obvious flaws in the testimony, where a claimant has failed to put the vocational expert's foundation or methodology into issue and the expert's testimony is otherwise uncontradicted, the ALJ is entitled to credit that testimony. *Fettig*, 62 F.4th at 337; *Liskowitz v. Astrue*, 559 F.3d 736, 744 (7th Cir. 2009); *see also Donahue v. Barnhart*, 279 F.3d 441, 446–47 (7th Cir. 2002).

In this case, there are no such glaring defects in Lott's testimony. Lott testified that she was familiar with Schmitz's prior work and the requisite skills and exertional levels associated with that work. She concluded that a hypothetical person with the same education, work history, and limitations the ALJ had attributed to Schmitz—including constraints on her ability to learn the requirements of a new job, to make work decisions, to interact with co-workers and adapt to changes in work processes and procedures—would not be able to perform Schmitz's past relevant job as a public relations representative. But Lott identified a number of light-work jobs that she believed such an individual could perform. When asked by the ALJ if there were jobs the individual could do if she were limited to sedentary work, Lott answered yes and identified examples of those jobs and indicated the numbers of positions associated with each job. But as the ALJ posed a variety of additional restrictions on this hypothetical person's ability to work—including a reaching limitation, regular absences, and a substantial amount of time spent off-

task—Lott indicated that the person would be unable to perform the jobs she had just identified and that, depending on the particular limitation, there would be few to no other jobs that the individual could perform. In addressing these additional restrictions, Lott indicated that the *Dictionary of Occupational Titles* ("the *Dictionary*")—which describes jobs that exist in the national economy and identifies the requirements associated with those jobs—was unhelpful as to two out of three of the restrictions the ALJ had posited. In those instances, Lott relied on her own experience in identifying what jobs, if any, an individual with such restrictions might be able to perform. R. 9 at 65–71.[2]

When Schmitz's counsel cross-examined Lott, he asked follow-up questions of her regarding the extent to which there would be tolerance for off-task behavior, absenteeism, taking hourly breaks, or being unable to interact with managers or co-workers. Again, Lott agreed that a hypothetical individual with these additional limitations would be unable to perform any of the light-work or sedentary jobs she had previously identified and more generally would not be eligible for regular, competitive employment of any kind. R. 9 at 71–73.

Finally, when asked by the ALJ at the conclusion of her testimony, Lott affirmed that her testimony was consistent

---

[2] The ALJ ultimately did not find that Schmitz's limitations included the reaching constraints, regular absenteeism or 20-percent off-task behavior about which he had queried Lott. Lott, of course, testified that those additional restrictions would render a person unable to perform any of the jobs she had previously identified—cafeteria attendant, cleaner-housekeeping, folder, final assembler, circuit board assembler, and sorter. The ALJ's finding that Schmitz could perform these jobs thus rules out these additional limitations.

with the *Dictionary* except where she had indicated it was based on her own experience in the field. R. 9 at 72–73.

Lott was a well-credentialed witness with more than 10 years' experience in the vocational rehabilitation field. Her testimony was coherent and plausible. It is true that Lott did not reveal her data sources and methodology for arriving at the number of positions associated with each of the jobs she had discussed. This was an area of inquiry that Schmitz's counsel could have pursued but did not. As is evident from our summary of Lott's testimony, counsel's focus was centered on Schmitz's ability to do those jobs rather than the numbers of positions available and Lott's sources and methodology in arriving at those numbers. Schmitz thus forfeited any objection to the reliability of Lott's job-number estimates. On its face, and in the absence of an objection by Schmitz, Lott's testimony met the substantial evidence standard.

Schmitz nonetheless suggests that there is a fatal flaw in the record. Invoking Social Security Ruling 00-4p, 65 Fed. Reg. 75759-01, 2000 WL 1765299 (Dec. 4, 2000),[3] Schmitz notes that the ALJ had a duty to identify and obtain a reasonable explanation for any apparent conflict between Lott's testimony and the *Dictionary* and then to explain in her decision how any such conflict has been resolved. The *Dictionary*, which provides job descriptions, does not include data as to the number of existing positions associated with each job in the national economy; indeed, as the Commissioner points out, that is precisely why ALJs frequently call upon vocational experts to

---

[3] The Social Security Administration announced recently that it is rescinding SSR-04p effective January 6, 2025. *See* Social Security Ruling 24-3p, 89 Fed. Reg. 97158-01, 2024 WL 4988840 (Dec. 6, 2024).

testify as to how many positions exist in the national economy that are open to a claimant given her particular abilities and limitations. *See Chavez II*, 96 F.4th at 1021–22.

Nothing in Lott's testimony suggested that she was defining the jobs that she discussed in a way that was at odds with, or might be at odds with, the definitions set forth in the *Dictionary*. The duty imposed by Ruling 00-4p thus did not come into play. Lott simply argues that absent inquiry by the ALJ into the bases for Lott's testimony as to the available job numbers, it is possible that Lott may have been identifying and defining jobs in a way that could conflict with the *Dictionary*. But this is nothing more than an abstract possibility; to repeat, nothing in Lott's testimony suggests that she was defining the scope and requisite abilities of the relevant work positions in a way that was inconsistent with the *Dictionary*.

Lott's contention that Ruling 00-4p required the ALJ to inquire further than she did to discover whether there might be such a conflict behind the job numbers Lott offered stretches the Ruling beyond its limits. *See Overman v. Astrue*, 546 F.3d 456, 463 (7th Cir. 2008) (per curiam) (if counsel failed to identify such a conflict at the hearing, then Ruling 00-4p comes into play only if the conflict was so obvious that the ALJ was bound to pick up on it without assistance, because the ALJ's duty extends only to apparent conflicts); *Donahue*, 279 F.3d at 446–47 ("The ruling requires an explanation only if the discrepancy was 'identified'—that is, if the claimant (or the ALJ on his behalf) noticed the conflict and asked for substantiation."); *Sawyer v. Colvin*, 512 F. App'x 603, 610 (7th Cir. 2013) (non-precedential decision) (a potential conflict is not the type of apparent, actual conflict that an ALJ must address and resolve).That the ALJ did not, on his own initiative, question

Lott more closely in order to determine whether an unspoken, potential conflict between the *Dictionary* and her methodology, does not render the ALJ's decision flawed, nor does it suggest that the ALJ's decision lacks the support of substantial evidence.

Schmitz was represented at the hearing and had the opportunity to question Lott as to her sources and to make an objection if her answers were insufficient. Instead, she remained silent. As discussed, there was no obvious flaw in the foundation or rationale of Lott's testimony. Consequently, the ALJ was entitled to credit Lott's opinions, and the ALJ's finding as to the jobs that Schmitz could perform was supported by substantial evidence.

### III.

The ALJ's decision is supported by substantial evidence. We therefore AFFIRM the district court's judgment.