# U.S. COURT OF APPEALS FOR THE THIRD CIRCUIT

No. 25-1155

LORI JANE FACER
Appellant

v.

COMMISSIONER SOCIAL SECURITY

_____

Appeal from the U.S. District Court, W.D. Pa.
Judge Mark R. Hornak
No. 3:23-cv-00281

Before:  Shwartz, Chung, and Ambro, *Circuit Judges*
Submitted Under Third Circuit L.A.R. 34.1(a) Jan. 16, 2026
Decided: January 20, 2026

_____

NONPRECEDENTIAL OPINION[*]

CHUNG, *Circuit Judge.* Lori Facer appeals the District Court's judgment affirming the Social Security Administration's denial of her disability benefits claim.  She argues that the Administrative Law Judge ("ALJ") erred in concluding that her mental impairments were not severe and would "have no impact on her capacity for work," Opening Br. 22, and by failing to properly evaluate the opinions of certain medical professionals.  Because the ALJ's determinations are supported by substantial evidence, we will affirm.

---

[*] This disposition is not an opinion of the full Court and, under I.O.P. 5.7, is not binding precedent.

## I. BACKGROUND[1]

In January of 2018, Facer was involved in a car accident and sustained a concussion. At the time, she was working as a retention specialist, and had worked as a phlebotomist in the past. Facer continued to work as a retention specialist for two years after the accident until she was laid off in June 2020.

A month after her layoff, Facer applied for disability insurance benefits, alleging disability due to multiple physical and mental impairments, including anxiety, depression, and PTSD. From early 2020 through the ALJ's final denial of her application, Facer received mental health treatment from several providers. The treatment records show that Facer was diagnosed with PTSD and Tobacco Use Disorder, and that her self-reported symptoms of PTSD, depression, and anxiety resulted in "severe" ratings in those categories in psychiatric symptom screenings. CAR447. However, the treatment records also show that observations by providers generally reflected that Facer's memory and cognition were "intact"; her mood was "euthymic"; she exhibited "normal" behavior and thought process; her insight and judgment were "excellent"; and her attention and concentration were "good." CAR1153–55; see also CAR708, CAR1126, CAR1130, CAR1134, CAR1140.[2]

Madison Foreman, a counselor employed by one of Facer's doctors, also at one point checked boxes on a Mental Capacity Assessment indicating that Facer would have "none" or "slight" limitations in most areas, except for "moderate" limitations in understanding,

---

[1] Because we write for the parties, we recite only the facts pertinent to our decision.

[2] "CAR" refers to the Certified Administrative Record, and "A" refers to the Appendix to Facer's appellate brief.

2

remembering, and carrying out instructions, maintaining attention, and performing activities within a schedule; "marked" or "extreme" limitations in the ability to travel to unfamiliar places, use public transportation, or complete a normal workweek without interruption from psychologically-based symptoms; and would likely have four or more absences from work in an average month. CAR1148–50. Dr. Mancini, a state agency psychological consultant, concluded in a Disability Determination that Facer would have "mild" limitations in understanding, remembering, and applying information, and "moderate" limitations in interacting with others, concentrating, persisting or maintaining pace, and adapting or managing herself. CAR90.

Facer's application for disability benefits was initially denied on November 13, 2020 and denied upon reconsideration on March 8, 2021. Per Facer's request, a hearing was held on June 15, 2022. The ALJ issued a decision on July 13, 2022 that Facer was not disabled from June 27, 2020, her alleged onset date, through July 13, 2022, the date of the decision. Specifically, the ALJ concluded that while Facer could not be employed in a job that requires her to drive a motor vehicle, she could perform one of the semi-skilled jobs she had performed in the past, namely the occupation of phlebotomist. Facer unsuccessfully appealed the ALJ's decision to the District Court. She then timely appealed the District Court's judgment to this Court.

## II. ANALYSIS[3]

Section 423(d)(1)(A) of the Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment … which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To satisfy the statute's requirements for proving disability, a claimant must establish that "not only is she incapable of performing her previous work, but [that] she is also incapable of engaging in 'any other kind of substantial gainful work which exists in the national economy.'" Zirnsak v. Colvin, 777 F.3d 607, 611 (3d Cir. 2014) (quoting 42 U.S.C. § 423(d)(2)(A)).

A five-step evaluation process, contained in 20 C.F.R. § 404.131, provides the requirements for determining whether a claimant has met her burden of establishing disability.[4] Facer challenges the ALJ's determinations at steps two and four of that process.

_____

[3] The District Court had jurisdiction under 42 U.S.C. § 405(g). We have jurisdiction under 28 U.S.C. § 1291. We review the District Court's determination of legal issues de novo, and we "review an ALJ's decision under the same standard of review as the District Court, to determine whether there is substantial evidence on the record to support the ALJ's decision." Hagans v. Comm'r of Soc. Sec., 694 F.3d 287, 292 (3d Cir. 2012).

[4] That process proceeds as follows:

> First, the Commissioner considers whether the claimant is "engaging in substantial gainful activity." [20 C.F.R.] § 404.1520(a)(4)(i). … Second, the Commissioner considers the severity of the claimant's impairment(s). *Id.* § 404.1520(a)(4)(ii). … Third, the Commissioner considers whether the claimant's impairment(s) meet or equal the requirements of one of the Commissioner's listed impairments. *Id.* § 404.1520(a)(4)(iii). … [At] the fourth step, [] the Commissioner considers whether the claimant can return to her past work. *Id.* § 404.1520(a)(4)(iv). To determine whether the claimant can perform her past work, the Commissioner

4

**A. The District Court's Conclusion that Facer's Mental Impairments Were Not Severe is Supported by Substantial Evidence.**

At step two, the ALJ found that at least one of Facer's physical impairments was "severe," A014, but that her mental impairments did not cause "more than minimal limitation" on her functioning and thus were not severe. A016.

Substantial evidence supports that finding. In making the determination, the ALJ analyzed the four broad functional areas upon which Facer's mental impairments could impose limitations, see 20 C.F.R. § 404.1520a, and thoroughly evaluated Facer's medical records. Those records include assessments based on Facer's self-reported symptoms, as well as objective mental status examinations that reported findings of "normal," "unremarkable," or "excellent" for a range of behavioral areas including mood, thought process, insight, judgment, and attention. A017–019. The ALJ also considered Facer's limited participation in hobbies including hunting, fishing, walking, and riding 4-wheelers. Based on the record, a reasonable mind could accept the ALJ's conclusion that Facer's mental impairments were not severe. See Biestek v. Berryhill, 587 U.S. 97, 102–03 (2019) ("[Substantial evidence] means—and means only—'such relevant evidence as a reasonable

---

assesses the claimant's residual functional capacity ("RFC"). *Id.* § 404.1520(e). A claimant's RFC measures "the most [she] can do despite [her] limitations." *Id.* § 404.1545(a)(1). … [At] step five, [] the Commissioner bears the burden of establishing the existence of other available work that the claimant is capable of performing.

Zirnsak, 777 F.3d at 611-12.

mind might accept as adequate to support a conclusion.'" (quoting Consol. Edison Co. of New York v. N.L.R.B., 305 U.S. 197, 229 (1938))).[5]

Facer argues that substantial evidence did not support the ALJ's conclusion because the ALJ failed to specifically reference her test scores for PHQ-9, GAD-7, and PTSD. It is clear from the decision, however, that the ALJ did not ignore these tests. **A16-19.** In addition, the ALJ was not required to discuss each specific test—here involving self-reported symptoms—in her analysis. See Zaborowski v. Comm'r of Soc. Sec., 115 F.4th 637, 639 (3d Cir. 2024) (ALJs are required "to explain only the dispositive reasons for their decisions, not everything else that they considered" (citing 42 U.S.C. § 405(b)(1))).

## B. The ALJ's Determination that Facer's Mental Health Symptoms Did Not Impact Her Ability to Work Beyond Driving is Supported by Substantial Evidence.

When evaluating medical opinions, including to inform the ALJ's assessment of an applicant's RFC and her ability to perform past work at step four, an ALJ "must *consider* a range of factors, but all they must *explain* are the reasons for their decisions." Zaborowski, 115 F.4th at 638. The most important factors to consider are supportability and consistency. See 20 C.F.R. § 404.1520c(a). In satisfying this requirement, an ALJ

---

[5] Facer also cites Newell v. Commissioner of Social Security to argue that because "[t]he step-two inquiry is a de minimis screening device to dispose of groundless claims," the ALJ should have found her mental impairments "severe" at step two and proceeded to analyze her claim. 347 F.3d 541, 546 (3d Cir. 2003). Even if we were to adopt Facer's reasoning, the ALJ found that Facer suffered from certain "severe" physical impairments and proceeded to the next step of the evaluation process. In doing so, the ALJ considered the impact of Facer's mental impairments, thus rendering any error at step two harmless. See Ray v. Berryhill, 915 F.3d 486, 492 (7th Cir. 2019); Buck v. Berryhill, 869 F.3d 1040, 1049 (9th Cir. 2017); but see Nicola v. Astrue, 480 F.3d 885, 887 (8th Cir. 2007).

"need not reiterate the magic words 'support' and 'consistent' for each doctor," and may "weave [discussion of] supportability and consistency throughout her analysis." Zaborowski, 115 F.4th at 639. Moreover, an "ALJ is free to accept some medical evidence and reject other evidence, provided that he provides an explanation for discrediting the rejected evidence." Zirnsak, 777 F.3d at 614.

The ALJ's decision shows that she considered the supportability and consistency of Facer's medical records and adequately explained her reasons for giving certain opinions from Foreman and Mancini less weight. See A016–019, A020–25. In particular, the ALJ noted that Foreman's conclusion that Facer possessed certain "moderate" and "marked" limitations was inconsistent with other medical evidence in the record, including Foreman's own contemporaneous treatment notes observing that Facer's memory was "intact," her insight and judgment "normal," her attention and concentration "good," and her functional status "intact." A018–19; see CAR1153–55. With respect to Dr. Mancini's evaluation, the ALJ found that Dr. Mancini's report of certain "moderate" mental limitations was inconsistent with several portions of the record that Dr. Mancini cited, as reflected in his own notes. A019. Noting these inconsistencies, the ALJ concluded that Foreman's and Dr. Mancini's opinions were not persuasive. The ALJ thus "w[ove] supportability and consistency throughout her analysis of which doctors were persuasive" by discussing the consistency and supportability of each medical opinion within the context of the entire record. Zaborowski, 115 F.4th at 639.

Facer argues nonetheless that the ALJ failed to address the consistency between the opinions of Foreman and Dr. Mancini, who both opined that she suffered from varying

7

levels of impairment, and failed to articulate a valid basis for finding that Foreman's opinion was unsupported by the record. Based on our review above, we disagree.[6]

* * * * *

For the foregoing reasons, we will AFFIRM.

---

[6] Facer also claims that the ALJ erred by failing to "explain how [she] impliedly concluded that Plaintiff's mental impairments have absolutely no effect on her RFC." Opening Br. 22–23. To the contrary, the record shows that the ALJ engaged in a thorough and explicit evaluation of Facer's alleged mental impairments at steps 3 and 4 and in arriving at her RFC, relied upon her mental impairments in excluding any job requiring driving from Facer's RFC. AR014–19, AR020–25.